1  RUTAN & TUCKER, LLP
   Duke F. Wahlquist (State Bar No. 117722)
2  Lisa N. Neal (State Bar No. 205465)
   Gerard M. Mooney (State Bar No. 222137)
3  611 Anton Boulevard, Fourteenth Floor
   Costa Mesa, California 92626-1931
4  Telephone:714-641-5100
   Facsimile: 714-546-9035
5
6  Attorneys for Plaintiff VIZIO, INC.

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| VIZIO, INC. a California corporation, | Case No. |
| Plaintiff, | **PLAINTIFF VIZIO, INC.'S COMPLAINT AGAINST DEFENDANTS NAVIGATORS INSURANCE COMPANY AND ARCH INSURANCE COMPANY FOR:** |
| vs. | |
| NAVIGATORS INSURANCE COMPANY, a New York corporation; ARCH INSURANCE COMPANY, a Missouri corporation, | **(1) BREACH OF WRITTEN CONTRACT OF INSURANCE AGAINST NAVIGATORS;** |
| Defendants. | **(2) BREACH OF WRITTEN CONTRACT OF INSURANCE AGAINST ARCH;** |
| | **(3) TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST NAVIGATORS;** |
| | **(4) TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST ARCH;** |
| | **(5) EQUITABLE CONTRIBUTION AGAINST NAVIGATORS;** |
| | **(6) EQUITABLE CONTRIBUTION AGAINST ARCH;** |
| | **(7) DECLARATORY RELIEF AGAINST NAVIGATORS AND ARCH.** |

/ / /

/ / /

1      Plaintiff VIZIO, Inc. ("Plaintiff" or "VIZIO") for its Complaint against

2  defendants Navigators Insurance Company ("Navigators") and Arch Insurance

3  Company ("Arch"), alleges and prays as follows:

4                   **JURISDICTION AND VENUE**

5      1.    This is an action for (a) breach of written contract, (b) breach of the

6  implied covenant of good faith and fair dealing, (c) equitable contribution, and

7  (d) declaratory relief pursuant to, *inter alia*, 28 U.S.C., section 2201.  The

8  jurisdiction of this Court is founded on 28 U.S.C., section 1332 (diversity), as well

9  as this Court's supplemental jurisdiction pursuant to 28 U.S.C., section 1367.

10      2.    The amount in controversy exceeds the jurisdictional minimum of this

11  Court, as set forth below.

12      3.    This Court may exercise personal jurisdiction over Navigators and

13  Arch in that, *inter alia*, (a) Navigators and Arch are each parties to separate

14  contracts with VIZIO, each of which was entered into in Orange County, California,

15  and each of which provides for continuing obligations on Navigators' and Arch's

16  parts in Orange County, California, and (b) Navigators and Arch have both done and

17  continue to regularly do business in Orange County, California.

18      4.    Venue is proper in this judicial district pursuant to, *inter alia*,

19  28 U.S.C., section 1391(b)(2), as a substantial part of the action arose in Orange

20  County, California as alleged below, as well as 28 U.S.C., section 1391(b)(3).

21                     **THE PARTIES**

22      5.    VIZIO is a California corporation duly organized and in good standing

23  under the laws of the State of California.  VIZIO's principal place of business is

24  now, and at all times relevant hereto was, in Irvine, California.

25      6.    Plaintiff is informed, believes and based thereon alleges that Navigators

26  is a New York corporation, licensed and admitted to underwrite liability insurance

27  in the State of California, with its principal place of business in New York, New

28  York.

7.     Plaintiff is further informed, believes and based thereon alleges that Arch is a Missouri corporation, licensed and admitted to underwrite liability insurance in the State of California, with its principal place of business in Kansas City, Missouri.

## FACTUAL CHRONOLOGY

### The Subject Insurance Policies

8.     For good and valuable consideration, Federal Insurance Company ("Chubb") issued its Commercial General Liability ("CGL") Policy Numbers 3590-42-48 and 3590-42-48 SFO ("Chubb's CGL Policies") to VIZIO for each of the policy periods from December 31, 2013 to December 31, 2014, December 31, 2014 to December 31, 2015, and December 31, 2015 to December 31, 2016.  For good and valuable consideration, Chubb also issued its Commercial Excess and Umbrella Insurance Policy No. 7986-57-47 ("Chubb's Umbrella Policies") to VIZIO for each of the policy periods December 31, 2013 to December 31, 2014, December 31, 2014 to December 31, 2015, and December 31, 2015 to December 31, 2016.  VIZIO refers to Chubb's CGL Policies and Chubb's Umbrella Policies herein collectively as  "Chubb's Policies."  True and correct copies of Chubb's Policies for 2013 through 2016 are collectively attached hereto and incorporated herein as Exhibits "1" through "6."

9.     For good and valuable consideration, Navigators issued its Policy Number CH13DOL610110IV ("Navigators' Policy") to VIZIO for the "**Policy Period**"[1] incepting December 31, 2013, which at inception provided for expiration on June 30, 2015, and which was amended to expire on December 1, 2015 pursuant to an Endorsement to the Policy.  Navigators' Policy has a $5,000,000 limit of

---

[1]   When used in discussing the provisions of Navigators' Policy, terms appearing in this Complaint in bold are used as defined in Navigators' Policy, attached hereto and incorporated herein as Exhibit "7."  Similarly, when used in discussing the provisions of Arch's Policy (as hereinafter defined and as found in Exhibit "8"), terms appearing in this Complaint in bold are used as defined in Arch's Policy.

1  liability and a $100,000 per claim retention.  A true and correct copy of Navigators'

2  Policy is attached hereto and incorporated herein as Exhibit "7."

3       10.    In Navigators' Policy, at Directors and Officers Liability Coverage

4  Part, Section I, Insuring Agreements, Par. C, Navigators undertook to and did insure

5  VIZIO as follows:

> [Navigators] will pay to or on behalf of the **Company** all **Loss** which the **Company** is legally obligated to pay as a result of a **Claim** first made against it during the **Policy Period** or the Discovery Period, if purchased, for a **Wrongful Act** by the Company.

9  This provision of Navigators' Policy is sometimes hereinafter referred

10  to as "Navigators' Policy's Insuring Clause."

11       11.    Relevant to Navigators' Policy's Insuring Clause[2], Navigators' Policy

12  defines the following terms:

- "**Claim**" will mean:

    1. a written demand for monetary or non-monetary relief made against any **Insured**; . . .

    3. a civil, criminal, administrative or arbitration proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment or criminal information, or the receipt or filing of notice of charges or similar document.[3]

- "**Company**" will mean the **Corporation** and any **Subsidiary**.[4]

- "**Corporation**" will mean the entity named in ITEM 1 of the Declarations [Vizio Inc.].[5]

- "**Loss**" will mean compensatory damages, punitive or exemplary damages, the multiple portion of any multiplied damage award, settlements and **Costs of Defense**; provided, however, that **Loss** will not include salaries, wages, overhead or benefit expenses associated with any **Insured**, criminal or civil fines or penalties

---

[2] Exh. 7, Directors and Officers Liab. Coverage Part, Sec. I, Par. C.
[3] Exh. 7, Gen. Terms and Cndtns., Sec. II, Definitions, Par. A.
[4] Exh. 7, Gen. Terms and Cndtns., Sec. II, Definitions, Par. B.
[5] Exh. 7, Gen. Terms and Cndtns., Sec. II, Definitions, Par. C.

imposed by law, taxes, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.  It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award.[6]

- "**Costs of Defense**" will mean reasonable and necessary legal fees, costs and expenses incurred in the investigation, defense or appeal of any **Claim**, including the costs of an appeal bond, attachment bond or similar bond; provided, however, that the Insurer will have no obligation to apply for or furnish any such bond.[7]

- "**Wrongful Act**" will have, with respect to the coverage afforded in each Coverage Part attached to and forming a part of this Policy, the meaning given to that term in such Coverage Part.[8]

12.     Relevant to this action, Navigator's Policy also provides:

"All **Claims** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** will be considered a single **Claim**, and will be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this **Policy** or any other policy providing similar coverage."[9]

Relevant to this clause, Navigator's policy defines the expression "**Related Wrongful Acts**":

"**Related Wrongful Acts**" will mean **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, event or decision."[10]

13.     Relevant to this action, Navigators' Policy contains the following exclusions:

The **Insurer** will not be liable under this Coverage Part to make any payment of **Loss**, including **Costs of Defense**, in connection with any **Claim** made against any **Insured**;

---

[6]   Exh. 7, Gen. Terms and Cndtns., Sec. II, Definitions, Par. J.
[7]   Exh. 7, Gen. Terms and Cndtns., Sec. II, Definitions, Par. D.
[8]   Exh. 7, Gen. Terms and Cndtns., Sec. II, Definitions, Par. O.
[9]   Exh. 7, Gen. Terms and Cndtns., Sec. VIII, General Conditions, Par. B.
[10]  Exh. 7, Gen. Terms and Cndtns., Sec. II, Definitions, Par. M.

1.     brought about or contributed to or by:

       a.     the gaining by any **Insured** of any profit, advantage or remuneration to which such **Insured** was not legally entitled; or

       b.     the deliberately fraudulent or criminal acts of any **Insured**;

provided, however: (i) this exclusion shall only apply if it is finally adjudicated such conduct in fact occurred.

* * *

4.     for any actual or alleged:

       a.     . . . invasion of privacy . . .

       b.     damage to or destruction of any tangible property, including the loss of use thereof[.][11]

14.     Arch issued its Policy Number PCX9300042-00 ("Arch's Policy") to VIZIO for the initial policy period of December 31, 2013 through June 30, 2015, subject to an Endorsement extending the policy period through December 1, 2015. A true and correct copy of Arch's Policy is attached hereto and incorporated herein as Exhibit "8." Arch's Policy "follows form to" Navigators' Policy, and is excess over Navigators' Policy:

This Policy provides excess coverage after exhaustion of the **Underlying Limit**. Except as otherwise provided in this Policy, coverage under this Policy shall follow form to, and apply in conformance with, the provisions of the **Primary Policy** as of the inception of this Policy. Notwithstanding the foregoing, this Policy shall provide no broader coverage than the most restrictive policy of **Underlying Insurance**.[12]

15.     Arch's Policy defines "**Underlying Limit**" to mean "the aggregate sum of all limits of liability of all **Underlying Insurance**."[13]  "**Underlying Insurance**"

---

[11] Exh. 7, Directors and Officers Liab. Coverage Part, Sec. III, Exclusions, Par. A.1.
[12] Exh. 8, Follow Form Excess Liab. Ins. Policy, Sec. 1, Insuring Agreement.
[13] Exh. 8, Follow Form Excess Liab. Ins. Policy, Sec. 3, Definitions, Par. F.

is defined to mean "the **Primary Policy** and any **Underlying Excess Policies**."[14] "**Primary Policy**" and "**Underlying Excess Policies**" are "identified in Item 4 of the Declarations," which lists Navigators' Policy as the **Primary Policy** and **Underlying Insurance**.[15]

16.    Implicit in both Navigators' Policy and Arch's Policy was an implied obligation of good faith and fair dealing that neither Navigators nor Arch would do anything to injure the right of VIZIO to receive the benefits of Navigator's Policy or Arch's Policy.  Any act or failure to act by Navigators or Arch to unreasonably or without proper cause deprive VIZIO of the benefits of their respective policies would be a breach of this implied obligation of good faith and fair dealing.

## The Smart TV Litigation

17.    Between in or about November 2015 and October 2017, a series of lawsuits were filed against VIZIO pertaining to, generally speaking, VIZIO's Smart Interactivity and related technologies developed and used in connection with VIZIO Smart TV products.  These lawsuits – referred to herein collectively as the "Smart TV Litigation" – included the multi-district litigation in the Central District of California, styled, *In Re: Vizio, Inc., Consumer Privacy Litigation*, C.D. Cal. Case No. 8:16-ml-02693-JLS-KES (the "MDL Case"), and the following actions:

| Filing Date | Title of Action |
| --- | --- |
| 11/11/2015 | *Watts v. Vizio Holdings*, CD Cal 8:15-cv-01860 |
| 11/13/2015 | *Reed v. Cognitive Media*, ND Cal 3:15-cv-05217 |
| 11/25/2015 | *Weiss v. Vizio, Inc.*, SD Cal. 8:15-cv-01984 |
| 12/10/2015 | *Ogle v. Vizio, Inc.*, ED Ark 4:15-cv-00754 |
| 12/15/2015 | *Mason v. Vizio Holdings*, ND Ill 1:15-cv-11288 |
| 12/16/2015 | *Hodges v. Vizio, Inc.*, CD Cal 8:15-cv-02090 |
| 12/23/2015 | *Levine v. Vizio, Inc.*, CD Cal 8:15-cv-02151 |

---

[14]  Exh. 8, Follow Form Excess Liab. Ins. Policy, Sec. 3, Definitions, Par. E.
[15]  Exh. 8, Follow Form Excess Liab. Ins. Policy, Sec. 3, Definitions, Par. E & Declarations, Item 4.

| Filing Date | Title of Action |
|---|---|
| 12/29/2015 | *Jewett, et al. v. Vizio, Inc.*, ND Cal 3:15-cv-06281 |
| 12/29/2015 | *Sloan v. Vizio, Inc.*, CD Cal 8:15-cv-02166 |
| 12/30/2015 | *Pagorek v. Vizio, Inc.*, ND Ind. 2:15-cv-00472 |
| 01/11/2016 | *Eddy v. Vizio, Inc.*, ND Cal 3:16-cv-00167 |
| 01/19/2016 | *Craig v. Vizio, Inc.*, MD Fla 5:16-cv-00026 |
| 01/22/2016 | *Anderson v. Vizio, Inc.*, ND Cal 3:16-cv-00409 |
| 01/25/2016 | *Dassa, et al. v. Vizio Holdings*, SD Fla 9:16-cv-80130 |
| 01/29/2016 | *Milewski v. Vizio Holdings*, CD Cal 8:16-cv-00156 |
| 02/17/16 | *Thomson v. Vizio, Inc.*, CD Cal 8:16-cv-00276 |
| 02/17/16 | *Strader v. Vizio, Inc.*, SD Ind 1:16-cv-00381 |
| 02/18/16 | *Bratland v. Vizio, Inc.*, CD Cal 8:16-cv-00284 |
| 02/18/16 | *Tongarm v. Vizio, Inc.*, ND Cal 4:16-cv-00822 |
| 03/11/16 | *Von Haden v. Vizio, Inc.*, ND Cal 3:16-cv-01201 |
| 04/06/16 | *Altman v. Vizio, Inc.*, S.D. NY 1:16-cv-02565 |
| 04/11/16 | *Lara v. Vizio Holdings*, C.D. Cal. 8:16-cv-00679 |
| 04/20/16 | *Kuntzmann v. WPP USA*, C.D. Cal. 8:16-cv-00750 |
| 04/20/16 | *Walsh v. Vizio, Inc.,* D. Mass. 1:16-cv-10758 |
| 05/11/16 | *Blumberg v. WPP Group*, D. NJ 3:16-cv-02670 |
| 05/17/16 | *DuFort v. Vizio, Inc.*, C.D. Cal 8:16-cv-00898 |
| 05/18/16 | *Bunnell v. Vizio Holdings*, C.D. Cal 8:16-cv-00906 |
| 09/13/16 | *DeLaurentis v. Vizio, Inc.*, C.D. Cal 8:16-cv-01700 |
| 10/23/17 | *Adran v. Vizio, Inc.,* C.D. Cal. 2:17-cv-07730 |

18.     VIZIO was a party to the Smart TV Litigation involving the "Smart TV Claims" (as defined herein), including the MDL Case.

/ / /

/ / /

19.     The Plaintiffs in the Smart TV Litigation brought claims against VIZIO in the Smart TV Litigation on a host of statutory and common law grounds – referred to herein collectively as the "Smart TV Claims" – including the following:

a.     The so-called Video Privacy Protection Act ("VPPA") (18 U.S.C., § 2710), which prohibits "video tape service provider[s]" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider."[16]  The VPPA further provides that "[a]ny person aggrieved . . . may bring a civil action in a United States district court" wherein "[t]he court may award (A) actual damages but not less than liquidated damages in an amount of $2,500; . . . (C) reasonable attorneys' fees and other litigation costs reasonably incurred . . . ."[17]

b.     The Federal Wiretap Act (18 U.S.C., § 2510, *et. seq.*), which prohibits intentional interception, disclosure or use of any wire, oral, or electronic communication and which authorizes civil recovery of actual damages, statutory damages and the violator's profits.[18]

c.     California's Invasion of Privacy Act, California Penal Code sections 630, *et seq.*, which prohibits "willfully and without the consent of all parties to the communication, or in any unauthorized manner, [1] read[ing], or attempt[ing] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [2] . . . us[ing], or attempt[ing] to use, in any manner, or for any purpose, or [3] . . . communicat[ing] in any way, any information so obtained[.]"[19]  This Act authorizes civil recovery of the greater of three times the amount of actual damages or statutory damages of $5,000 per violation.[20]

---

[16]  18 U.S.C., § 2710(b)(1).
[17]  18 U.S.C., § 2710(c)(1) and 18 U.S.C., § 2710(c)(2).
[18]  18 U.S.C., § 2511(1) and 18 U.S.C., § 2520.
[19]  Cal. Pen. Code, § 631(a).
[20]  Cal. Pen. Code, § 637.2(a).

1        d.     California's Consumer Legal Remedies Act, California Civil

2 Code, section 1750, including its provisions against mischaracterizations of a

3 product's characteristics, uses, benefits, standards and quality, and having an intent

4 not to sell goods as advertised.[21]

5        e.     California Civil Code, section 1798.81, which requires that a

6 business "take all reasonable steps to dispose, or arrange for the disposal, of

7 customer records within its custody or control containing personal information when

8 the records are no longer to be retained by the business by . . . (b) erasing, or (c)

9 otherwise modifying the personal information in those records to make it unreadable

10 or undecipherable through any means."[22]

11        f.     California Civil Code, section 1799.3, which precludes any

12 "person providing video recording sales or rental services" from "disclos[ing] any

13 personal information or the contents of any record, including sales or rental

14 information, which is prepared or maintained by that person, to any person, other

15 than the individual who is the subject of the record, without the written consent of

16 that individual."[23]  The statute provides for civil penalties of up to $500 for each

17 "willful violation, which may be recovered in a civil action[.]"[24]

18        g.     California's Unfair Competition Law (the "UCL") (Cal. Bus. &

19 Prof. Code, §§ 17200, *et seq.*), addressing "any unlawful, unfair or fraudulent

20 business act," thereby incorporating other statutes, including those discussed herein.

21        h.     California's False Advertising Law (Cal. Bus. & Prof. Code, §§

22 17500, *et seq.*), which prohibits "any person . . . [or] corporation . . . , or any

23 employee thereof with intent directly or indirectly to dispose of . . . personal

24 property . . . or to induce the public to enter into any obligation relating thereto, to

25 make or disseminate or cause to be made or disseminated before the public in this

26

---

27 [21] Cal. Civ. Code, § 1770(a)(5), (7) & (9).
   [22] Cal. Civ. Code, § 1798.81(b), (c).
28 [23] Cal. Civ. Code, § 1799.3(a).
   [24] Cal. Civ. Code, § 1799.3(c).

state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . , or concerning any circumstance or matter of fact connected with the proposed . . . disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]"[25]

    i. Florida's Deceptive and Unfair Trade Practices Act (the "FDUTPA") (Fla. Stat., §§ 501.201, *et seq.*), which seeks to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce."[26]   Violation of the FDUTPA can be based upon "any rules promulgated pursuant to the Federal Trade Commission Act," "[t]he standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts; or," more broadly, "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices."[27]   "[A]nyone aggrieved by a violation of [the FDUTPA] may bring an action" for a declaratory judgment and injunctive relief.[28]   An individual who has suffered loss due to a violation of the FDUTPA may recover actual damages, attorney's fees and court costs.[29]

    j. Violation of New York General Business Law, section 349, addressing all "[d]eceptive acts or practices[]."  This Law specifically applies "to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of [New York]," thus incorporating other statutes, such as those addressed

---

[25] Cal. Bus. & Prof. Code, § 17500.
[26] Fla. Stat., § 501.202(2); *see, also*, Fla. Stat., § 501.204(1).
[27] Fla. Stat., § 501.203(3).
[28] Fla. Stat., § 501.211(1).
[29] Fla. Stat., § 501.211(2).

above.  Any person who has been injured by reason of such an act may recover actual damages which the court may, in its discretion, increase to an amount not to exceed three times the actual damages up to $1,000, if the court finds the defendant willfully or knowingly violated the Law.[30]

        k.     Massachusetts' Unfair and Deceptive Trade Statute, which prohibits all "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"[31]   Any analysis of which acts are prohibited should be "guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C., § 45(a)(1))[.]"[32]   Any person who has been injured by a violation of Section 2(a) of the Statute may bring an action "for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper."[33]   Treble damages and attorneys' fees and costs may also be awarded.[34]

        l.     Massachusetts' Statutory Right to Privacy, which provides a statutory right to privacy and claim for violation of that right.[35]  "In order to prevail on a claim alleging an invasion of privacy, a plaintiff must prove there was 1) a gathering and dissemination of facts of a private nature that 2) resulted in an unreasonable, substantial or serious interference with his privacy.  [Citation omitted.]  In order to qualify for protection under the statute, the disclosed facts must be 'of a highly personal or intimate nature.'"[36]  Further, in addition to proving that a defendant "unreasonably, substantially and seriously interfered with his privacy by disclosing facts of [a] highly personal or intimate nature," the plaintiff

---

[30]  N.Y. Gen. Bus. Law, § 349.
[31]  Mass. Gen. Laws, ch. 93A, § 2(a).
[32]  *Ibid.*
[33]  Mass Gen. Laws, ch. 93A, § 9(1).
[34]  Mass Gen. Laws, ch. 93A, § 9(3)(A).
[35]  Mass. Gen. Laws, ch. 214, § 1B.
[36]  *Branyan v. Southwest Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass 2015) (quoting *Taylor v. Swartwout*, 445 F. Supp. 2d 98, 103 (D. Mass. 2006)).

1    must also prove that the defendant "had no legitimate reason for doing so."[37]

2    "Factors to be considered in assessing whether there has been an intrusion that is

3    unreasonable and substantial or serious include 'the location of the intrusion, the

4    means used, the frequency and duration of the intrusion, and the underlying purpose

5    behind the intrusion.'"[38]   Any person who has been injured by a violation of the

6    statute may seek equitable relief and damages.[39]

7            m.    Washington's Consumer Protection Act ("WCPA"), which

8    declares unlawful all "[u]nfair methods of competition and unfair or deceptive acts

9    or practices in the conduct of any trade or commerce[.]"[40]   "In a private action in

10   which an unfair or deceptive act or practice is alleged . . . a claimant may establish

11   that the act or practice is injurious to the public interest because it: (1) Violates a

12   statute that incorporates this chapter; (2) Violates a statute that contains a specific

13   legislative declaration of public interest impact; or (3)(a) Injured other persons; (b)

14   had the capacity to injure other persons; or (c) has the capacity to injure other

15   persons."[41]   An injured person may bring a civil action for damages, and may be

16   awarded treble damages, as well as attorneys' fees.[42]

17           n.    Common law claims for unjust enrichment/quasi-contract,

18   invasion of privacy based on intrusion, fraud by omission and negligent omission,

19   based upon VIZIO's supposed dissemination and use of information and disclosures

20   regarding the same.

21       20.    The Smart TV Claims arise from alleged "**Wrongful Acts** which are

22   logically or causally connected by reason of . . . common fact[s], circumstance[s],

23

24   _____

     [37]  *Martinez v. New England Medical Center Hospitals, Inc.*, 307 F. Supp. 2d 257,
25   267 (D. Mass. 2004).
     [38]  *E.T., a minor, by his parents v. Bureau of Special Educ. Appeals of the Div. of
26   Admin. Law Appeals*, 169 F. Supp. 3d 221, 250-251 (D. Mass. 2016) (quoting *Polay
     v. McMahon*, 468 Mass. 379, 383, 10 N. E. 3d 1122 (2014)).
27   [39]  Mass. Gen. Laws, ch. 214, § 1B.
     [40]  Wa. St., § 19.86.020.
28   [41]  Wa. St., § 19.86.093.
     [42]  Wa. St., § 19.86.090.

situation[s], transaction[s], event[s] or decision[s]"[43] and therefore for purposes of Navigator's Policy the Smart TV Litigation is "considered a single **Claim** . . . deemed to have been made on . . . the earliest date on which any such **Claim** was first made,"[44] to wit, November 11, 2015.

## **Navigators And Arch Deny Coverage Of The Smart TV Litigation And Smart TV Claims Asserted In the MDL Case**

21.     On or about February 2 and 3, 2016, VIZIO, through its insurance broker Woodruff Sawyer & Co., gave notice of multiple pending and served actions in the Smart TV Litigation to its insurers, Navigators and Arch. Those actions included the Smart TV Claims against VIZIO, including claims for violations of the Video Privacy Protection Act (18 U.S.C., § 2710), California Consumer Legal Remedies Act (Cal. Civ. Code, § 1750, *et seq*), California's Consumer Records Act (Cal. Civ. Code, § 1798.80), and California's Unfair Competition Law (Cal. Bus. & Prof. Code, §§ 17200, *et seq.*), as well as common law claims for fraud and negligence.  True and correct copies of the notices of claim (redacted to remove privileged attorney-client communications), which were sent by e-mail to Navigators and Arch, are attached hereto and incorporated herein collectively as Exhibit "9."

22.     VIZIO's communications of February 2 and 3, 2016 set forth in Exhibit "9" were, for purposes of the California Fair Claims Practices Regulations set forth at 10 CCR §§ 2695.1-2695.14, not only "communication[s] from a claimant, regarding a claim, that reasonably suggests that a response is expected" triggering obligations for both Navigators and Arch under 10 CCR § 2695.5(b)[45], but also

---

[43]  Exh. 7, Gen. Terms and Cndtns., Sec. II, Definitions, Par. M.
[44]  Exh. 7, Gen. Terms and Cndtns., Sec. VIII, General Conditions, Par. B.
[45]  "Upon receiving any communication from a claimant, regarding a claim, that reasonably suggests that a response is expected, every licensee shall immediately, but in no event more than fifteen (15) calendar days after receipt of that communication, furnish the claimant with a complete response based on the facts as then known by the licensee. This subsection shall not apply to require

"notice[s] of claim" under 10 CCR § 2695.2(n)[46], triggering obligations for both Navigators and Arch under 10 CCR § 2695.5(e)[47].

23.    In breach of its duties under 10 CCR § 2695.5(b) and 10 CCR § 2695.5(e) and the written and implied terms of Arch's Policy, Arch refused, failed or otherwise neglected to respond to VIZIO's February 2 and 3, 2016 notices of claim  of the multiple pending and served actions in the Smart TV Litigation.

24.    In breach of its duties under 10 CCR § 2695.5(b) and 10 CCR § 2695.5(e) and the written and implied terms of Navigators' Policy, on or about March 22, 2016, Navigators, through its Claims Counsel, Laura E. Levin, belatedly responded by e-mail to VIZIO's February 2016 notice of claim in written correspondence denying coverage of the Smart TV Litigation.  Navigators cited Navigators' Policy's exclusion for any **Claim** against VIZIO "for any actual or alleged bodily injury, sickness, disease or death of any person, mental anguish, emotional distress, invasion of privacy, trespass, nuisance, wrongful entry or eviction, assault, battery, loss of consortium, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, defamation or slander," and asserted

---

communication with a claimant subsequent to receipt by the licensee of a notice of legal action by that claimant."

[46]  "'Notice of claim' means any written or oral notification to an insurer or its agent that reasonably apprises the insurer that the claimant wishes to make a claim against a policy or bond issued by the insurer and that a condition giving rise to the insurer's obligations under that policy or bond may have arisen. For purposes of these regulations the term 'notice of claim' shall not include any written or oral communication provided by an insured or principal solely for informational or incident reporting purposes."

[47]  "Upon receiving notice of claim, every insurer shall immediately, but in no event more than fifteen (15) calendar days later, do the following unless the notice of claim received is a notice of legal action:  [¶] (1) acknowledge receipt of such notice to the claimant unless payment is made within that period of time. If the acknowledgment is not in writing, a notation of acknowledgment shall be made in the insurer's claim file and dated. Failure of an insurance agent or claims agent to promptly transmit notice of claim to the insurer shall be imputed to the insurer except where the subject policy was issued pursuant to the California Automobile Assigned Risk Program. [¶] (2) provide to the claimant necessary forms, instructions, and reasonable assistance, including but not limited to, specifying the information the claimant must provide for proof of claim; [¶] (3) begin any necessary investigation of the claim. [¶] (f) An insurer may not require that the notice of claim under a policy be provided in writing unless such requirement is specified in the insurance policy or an endorsement thereto."

the Smart TV Litigation was "based on an alleged invasion of privacy" such that this exclusion precluded coverage.  In addition, Navigators asserted VIZIO gave notice of the actions "more than 60 days after the end" of the **Policy Period**, and therefore Navigators contended that VIZIO's claim notification was not timely.  A true and correct copy of Navigators' letter denying VIZIO's claim is attached hereto and incorporated herein as Exhibit "10."

25.     On or about March 25, 2016, VIZIO's insurance broker Woodruff Sawyer & Co. forwarded, via e-mail, Ms. Levin's March 22, 2016 correspondence to Arch.  A true and correct copy of that e-mail (without attachments and redacted to remove privileged communications) is attached hereto and incorporated herein as Exhibit "11."

26.     On or about July 12, 2016, VIZIO sent Navigators a letter challenging Navigators' denial of policy benefits, which denial was based on inapplicable exclusions and the supposed untimeliness of VIZIO's notice.  True and correct copies of the July 12, 2016 letter and accompanying e-mail (redacted to remove privileged attorney-client communications) are attached hereto and incorporated herein as Exhibit "12."

27.     VIZIO's communications of July 12, 2016 set forth in Exhibit "12" were "communication[s] from a claimant, regarding a claim, that reasonably suggests that a response is expected" and to which VIZIO did not receive a timely response.[48]

28.     Instead of responding to VIZIO's communications of July 12, 2016, Exhibit "12," in writing, on or about August 4, 2016, Navigators' then outside counsel, Darren Le Montree of London Fischer, LLP, contacted VIZIO's in-house counsel Dennis Yeoh, and requested for the first time that VIZIO provide information regarding VIZIO's claim, which VIZIO timely provided between August and November 2016, and thereafter as requested by Navigators, through

---

[48]   10 CCR § 2695.5(b).

1   both Mr. Yeoh and VIZIO's coverage counsel Duke F. Wahlquist of Rutan &
2   Tucker, LLP ("Rutan & Tucker").  Messrs. Yeoh and Wahlquist also advised
3   Navigators that in April of 2016 Chubb had agreed to participate in VIZIO's defense
4   in the Smart TV Litigation.

5       29.    Not until January 31, 2017 did Navigators, through Mr. Le Montree,
6   respond in writing to the matters raised in VIZIO's letter of July 12, 2016, Exhibit
7   "12."  Mr. Le Montree wrote to VIZIO, expressly agreeing to participate in the
8   defense of the Smart TV Litigation subject to a full reservation of rights.  A true and
9   correct copy of the letter is attached hereto and incorporated herein as Exhibit "13."
10  Notwithstanding that express agreement, and as set forth in more detail below,
11  Navigators never in fact contributed to VIZIO's defense of the Smart TV Litigation.

12      30.    Navigators acknowledged in the January 31, 2017 letter that VIZIO
13  timely notified Navigators of the Smart TV Litigation within the period set forth in
14  Navigators' Policy, reversing its position in the March 22, 2016 letter (Exh. 10).
15  Nevertheless, Navigators asserted the application of the exclusion for any **Claim**
16  against VIZIO "for any actual or alleged . . . invasion of privacy," as well as for
17  "damage to or destruction of any tangible property[,] including loss of use thereof."

18      31.    Navigators contended in the January 31, 2017 letter that the then
19  existing actions constituting part of the Smart TV Litigation for which VIZIO had
20  provided notice "allege that the named plaintiffs' privacy rights along with the
21  privacy rights of a putative class of consumers have been violated."  In addition, Mr.
22  Le Montree wrote for Navigators:

23          [T]he MDL under which [the Smart TV Litigation] have
            been consolidated refers to the case as the "Vizio, Inc.
24          consumer privacy litigation."  The actions directly stem
            from alleged privacy rights violations including, for
25          example, that defendants unlawfully collected and
            disseminated personal information, that defendants
26          collected such information without consent and/or
            disclosure, violated the Video Privacy Protection Act,
27          violated the Federal Wiretap Act, and violated California
            state privacy statutes such as Cal. Civil Code § 1799.3.
28          Furthermore, to the extent that the Claimants assert that

their televisions were less useful or suffered impaired
value based on the claimed conduct alleged, exclusion
A(4)(b) may limit or preclude coverage.[49]

32.     Further, Navigators' January 31, 2017 letter asserted potential application of Exclusions A.1(a) and (b), which exclude "gaining of any profit, advantage or remuneration to which [the] Insured was not legally entitled," as well as "deliberately fraudulent or criminal acts of any Insured," among other exclusions.[50]

33.     Navigators' January 31, 2017 letter claimed that "[t]he A.1 exclusions may apply based on the allegations that the Insureds engaged in fraudulent and oppressive conduct designed to mislead and harm the Claimants and unjustly benefit themselves."[51]

34.     Although VIZIO had already provided substantial information to Navigators regarding the Smart TV Litigation – as Navigators acknowledged – Navigators' January 31, 2017 letter nonetheless requested that VIZIO provide nine different categories of additional broad-ranging information regarding the Smart TV Litigation, including prior communications with insurers; all potentially applicable insurance policies and related documents; organizational charts; any documents regarding rights of indemnity against various parties; as well as invoices and cost documents to date.[52]  Prior to January 31, 2017, Navigators did not undertake an adequate investigation of the claim, or even an adequate review of the terms of its own Policy, instead simply denying VIZIO's claim on March 22, 2016 on clearly inapplicable grounds.

35.     On or about May 1, 2017, through attorneys Ali R. Rabbani and Hyongsoon Kim of the law firm of Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), which served as defense counsel for VIZIO in connection with the matters

---

[49] Exh. 13 at 3.
[50] *Ibid.*
[51] *Ibid.*
[52] Exh. 13 at 6.

which comprise the Smart TV Litigation, including the MDL Case, VIZIO addressed part of Navigators' letter of January 31, 2017, confirming Navigators' agreement to cover VIZIO's **Defense Costs**.  True and correct copies of this letter and accompanying e-mail, redacted to remove confidential and privileged attorney-client content and attorney work product, are attached hereto and incorporated herein as Exhibit "14."

36.  On or about July 27, 2017, VIZIO's coverage counsel – Mr. Wahlquist of Rutan & Tucker – wrote to Mr. Le Montree, giving notice of a new action filed against VIZIO, *DeVoe v. Vizio, Inc.*, Orange County Superior Court Case No. 30-2017-00907006 ("*DeVoe*").  A true and correct copy of Mr. Wahlquist's e-mail (without attachments) is attached hereto and incorporated herein as Exhibit "15."  The *DeVoe* case was not part of the MDL Case.  Nevertheless, of significance to events alleged below, Mr. Wahlquist's e-mail specifically referenced the VIZIO Smart TV Litigation and reiterated that Mr. Wahlquist served as coverage counsel for VIZIO in connection with the Smart TV Litigation and the MDL case – something that Akin Gump's May 1, 2017 letter, Exhibit "14" also stated to Mr. Le Montree.[53]

37.  On or about July 31, 2017, VIZIO's defense attorney, Mr. Kim of Akin Gump, wrote to Navigators' counsel, Mr. Le Montree, providing a status update of the Smart TV Litigation and providing copies of Akin Gump's defense invoices.  True and correct copies of this letter and accompanying e-mail, redacted to remove confidential and privileged attorney-client content and attorney work product and additional exhibits, are attached hereto and incorporated herein as Exhibit "16."

38.  Through its defense counsel, Akin Gump, VIZIO provided additional letters updating Navigators on the Smart TV Litigation and the MDL Case and the

---

[53]  "In addition, Mr. Duke F. Wahlquist of Rutan & Tucker, LLP serves as coverage counsel to the various Vizio entities in connection with the Litigation.  Mr. Wahlquist's phone number is (714) 641-3404, and his email address is dwahlquist@rutan.com."

**Defense Costs** incurred therein for which Akin Gump issued invoices in July, August, September and October of 2017.  This was done in letters dated September 20, 2017, November 17, 2017 and November 22, 2017.  With respect to VIZIO's claim under Navigators' Policy for payment of VIZIO's **Defense Costs** incurred in the Smart TV Litigation and MDL Case for which Akin Gump issued invoices in May, June, July, August, September and October 2017, the information transmitted in Akin Gump's letters of May 1, 2017 (Exh. 14), July 31, 2017 (Exh. 16), September 20, 2017, and November 17 and 22, 2017, and otherwise previously transmitted to Navigators, comprised "proof of claim" for purposes of 10 CCR § 2695.2(s)[54] triggering an obligation of Navigators to accept or deny VIZIO's claim under 10 CCR § 2695.7(b)[55] or notify VIZIO that Navigators needed additional

---

[54]  "'Proof of claim' means any evidence or documentation in the possession of the insurer, whether as a result of its having been submitted by the claimant or obtained by the insurer in the course of its investigation, that provides any evidence of the claim and that reasonably supports the magnitude or the amount of the claimed loss."

[55]  "Upon receiving proof of claim, every insurer, except as specified in subsection 2695.7(b)(4) below, shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part. The amounts accepted or denied shall be clearly documented in the claim file unless the claim has been denied in its entirety.  [¶]  (1) Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge. Where an insurer's denial of a first party claim, in whole or in part, is based on a specific statute, applicable law or policy provision, condition or exclusion, the written denial shall include reference thereto and provide an explanation of the application of the statute, applicable law or provision, condition or exclusion to the claim. Every insurer that denies or rejects a third party claim, in whole or in part, or disputes liability or damages shall do so in writing.  [¶]  (2) Subject to the provisions of subsection 2695.7(k), nothing contained in subsection 2695.7(b)(1) shall require an insurer to disclose any information that could reasonably be expected to alert a claimant to the fact that the subject claim is being investigated as a suspected fraudulent claim.  [¶]  (3) Written notification pursuant to this subsection shall include a statement that, if the claimant believes all or part of the claim has been wrongfully denied or rejected, he or she may have the matter reviewed by the California Department of Insurance, and shall include the address and telephone number of the unit of the Department which reviews claims practices...."

1  information to do so pursuant to 10 CCR § 2695.7(c).  Navigators failed to perform

2  any of the actions necessary to comply with 10 CCR § 2695.7.[56]

3       39.    On or about November 22, 2017, Mr. Le Montree informed VIZIO by

4  e-mail that his firm would no longer be involved in the matter and suggested that

5  VIZIO contact Navigators directly about the claim, through Shira Mendelsohn of

6  Navigators.  A true and correct copy of Mr. Le Montree's e-mail of that date is

7  attached hereto as Exhibit "17."  Of significance to the events alleged below, those

8  to whom Mr. Le Montree directed his email included VIZIO's coverage counsel,

9  Mr. Wahlquist of Rutan & Tucker, as VIZIO had advised Navigators that Mr.

10  Wahlquist was VIZIO's coverage counsel.

11       40.    On or about December 18, December 29, and December 30, 2017,

12  VIZIO – through its counsel at Akin Gump – informed Navigators of a forthcoming

13  mediation of the Smart TV Litigation and requested that Navigators confirm it

14  would participate and advise as to its availability for scheduling.  True and correct

15  copies of the e-mails Mr. Kim of Akin Gump sent to Ms. Mendelsohn of Navigators

16  are attached hereto and incorporated herein as Exhibit "18."

17       41.    On or about January 8, 2018, attorney Robert L. Sallander of the law

18  firm of Greenan, Peffer, Sallander & Lally LLP ("Greenan Peffer") – retained by

19  Navigators to replace Mr. Le Montree and his firm – contacted Mr. Wahlquist of

20  Rutan & Tucker, coverage counsel for VIZIO.  Thereafter, Mr. Sallander e-mailed

21  Mr. Wahlquist a copy of a letter dated October 31, 2017, which Mr. Sallander

22  asserted he had previously e-mailed to VIZIO – but not to Mr. Wahlquist, despite

---

[56] "(c)(1) If more time is required than is allotted in subsection 2695.7(b) to determine whether a claim should be accepted and/or denied in whole or in part, every insurer shall provide the claimant, within the time frame specified in subsection 2695.7(b), with written notice of the need for additional time. This written notice shall specify any additional information the insurer requires in order to make a determination and state any continuing reasons for the insurer's inability to make a determination. Thereafter, the written notice shall be provided every thirty (30) calendar days until a determination is made or notice of legal action is served. If the determination cannot be made until some future event occurs, then the insurer shall comply with this continuing notice requirement by advising the claimant of the situation and providing an estimate as to when the determination can be made."

1    Navigators' knowledge that Mr. Wahlquist served as coverage counsel to VIZIO.

2    (*See*, *supra*, ¶¶ 35, 36.)  True and correct copies of Mr. Sallander's letter and the

3    accompanying e-mail to Mr. Wahlquist are attached hereto and incorporated herein

4    as Exhibit "19."

5           42.    Mr. Sallander's October 31, 2017 letter, Exhibit "19," was the first

6    written response by Navigators to VIZIO's "proofs of claim" regarding **Defense**

7    **Costs** incurred in the Smart TV Litigation represented by Akin Gump's letters of

8    May 1, 2017 (Exh. 14), July 1, 2017 (Exh. 16), and September 20, 2017.  As such a

9    response, the October 31, 2017 letter was untimely under 10 CCR § 2695.7(b)

10   ["shall immediately, but in no event more than forty (40) calendar days later, accept

11   or deny the claim, in whole or in part"] and deficient in not providing the notices

12   required by 10 CCR § 2695.7(b)(3)[57] and 10 CCR § 2695.7(f).[58]

13          43.    In Mr. Sallander's letter dated October 31, 2017, Navigators did

14   another about-face and asserted it had no obligation under Navigators' Policy to pay

15   **Defense Costs** or otherwise indemnify VIZIO in connection with the Smart TV

16   Litigation.  This was a reversal of Navigators' recognition of its duty to pay **Defense**

17   **Costs** as set forth in Navigators' counsel's letter of January 31, 2017, which was

18   itself a reversal of Navigators' refusal to participate in VIZIO's defense or

19   indemnify VIZIO as set forth in Navigators' letter of March 22, 2016.

20          44.    In the October 31, 2017 letter, Navigators asserted it had no "duty to

21   defend" VIZIO in connection with the Smart TV Litigation, and that the statement

22   in Navigators' counsel's letter of January 31, 2017 "regarding Navigators agreeing

23

24   _____

25   [57]  "Written notification pursuant to this subsection shall include a statement that, if the claimant believes all or part of the claim has been wrongfully denied or rejected, he or she may have the matter reviewed by the California Department of Insurance,

26   and shall include the address and telephone number of the unit of the Department which reviews claims practices."

27   [58]  "Except where a claim has been settled by payment, every insurer shall provide written notice of any statute of limitations or other time period requirement upon

28   which the insurer may rely to deny a claim."

1  to participate in the defense of the subject action refers not to Navigators' duty to

2  defend, but to Navigators' duty to reimburse defense costs to its insured."[59]

3  Navigators' October 31, 2017 letter stopped far short of agreeing to actually

4  reimburse any of VIZIO's costs of defense, instead only stating that "Navigators

5  will monitor this matter subject to the reservation of rights to assert the coverage

6  issues and defense referenced above."

7      45.    Attempting to justify Navigators' reversal of course with respect to

8  participating in the defense of the Smart TV Litigation and the MDL case,

9  Navigators' letter dated October 31, 2017 falsely asserted that "when Vizio first

10  tendered[60] the claims associated with the subject action to Navigators, Vizio failed

11  to disclose that its other insurer [Chubb] . . . had been providing a defense to the

12  subject action."[61]  In point of fact, VIZIO's first communication to Navigators

13  regarding the Smart TV Litigation and MDL Case, as alleged above, was the notice

14  of claim provided in February 2016, Exhibit "9."   At that time, Chubb was not and

15  had not been providing a defense to any of the Smart TV Litigation or the MDL

16  case.  Chubb first agreed to participate in VIZIO's defense in connection with the

17  Smart TV Litigation in April 2016.  Moreover, as alleged above, in or around

18  August 2016 VIZIO advised Navigators' counsel, Mr. Le Montree, that in April of

19  2016 Chubb had agreed to participate in VIZIO's defense in the Smart TV

20  Litigation.[62]  In short, Navigators' stated justification for its reversal was false and

21  Navigators knew it to be false.  Thus, Navigator's stated justifications were

22  fraudulent.

23

24

25  [59]  Exh. 19 at 3.
    [60]  In none of the communications between Vizio and Navigators did Vizio state
26  that it "tendered" anything.  See Exhs. 9, 12, 14, 15.
    [61]  Exh. 19 at 3.
27  [62]  *See*, ¶¶ 28, 36, *infra*, Exh. 14 ("as we have previously discussed, Chubb & Son
    ('Chubb'), a Division of Federal Insurance Company, has also offered to defend
28  Vizio, Inc. ('Vizio') in connection with the Litigation").

46.     Navigators' letter dated October 31, 2017 also asserted that Navigators' Policy was excess to Chubb and that "[t]o the extent Chubb is defending the subject action, Navigators has no duty to contribute with the other insurer Chubb"[63] and that Navigators "has no duty to reimburse Chubb for defense costs incurred in the subject action . . . and VIZIO is not currently defending this action."[64]  In stating these positions, Navigators relied on (1) a false supposition that Chubb had in fact paid for all of VIZIO's Defense Costs in connection with the Smart TV Litigation and the MDL Case and (2) Navigators' Policy's Section VII.  General Conditions, D. Other Insurance[65] found in Exhibit "7."  Further allegations regarding both of these points are set forth below.

47.     Turning first to Navigators' invocation of Navigators' Policy's Section VII.  General Conditions, D. Other Insurance, which Navigators cited in its letter of October 31, 2017 (Exh. 19), that provision of Navigators' Policy is what is commonly referred to as an "excess" other-insurance clause.[66]  Types of other-insurance clauses include what is commonly called a "pro-rata" other insurance clause specifying that when there is other valid and collectible insurance the insurer shall not be liable for more than a pro rata share of the loss; an "escape" other-insurance clause, which provides that existence of other valid and collectible insurance extinguishes the insurer's liability to the extent of such other insurance; and an "excess" other insurance clause, specifying that if there is other valid and

---

[63]  Exh. 19 at 3.
[64]  *Ibid.*
[65]  "All Loss payable under this Policy will be specifically excess of, and will not contribute with, any other valid and collectible insurance, including but not limited to any other insurance under which there is a duty to defend unless such other insurance is specifically excess of this Policy.  This Policy will not be subject to the terms of any other insurance policy or program."
[66]  *See, e.g.*, *American Continental Ins. Co. v. American Cas. Co. of Reading, Penn.*, 73 Cal.App.4th 508, 514 (1999); *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1305 (1998), *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal.4th 1059, 1079 (2002).

collectible insurance, the insurer is liable only to the extent the loss exceeds such other insurance.[67]  Hybrid provisions and composites are common.[68]

48.     Chubb's CGL Policies include other insurance clauses that are hybrid composites, and are "pro-rata" when other insurers' policies provide similarly.[69] "Historically, 'other insurance' clauses were designed to prevent multiple recoveries when more than one policy provided coverage for a particular loss."[70] "They have not generally been understood as dictating a particular exhaustion rule for policyholders. . . ."[71]  Moreover, "'other insurance clauses that attempt to shift the burden away from one primary insurer wholly or largely to other insurers have been the objects of judicial distrust. '[P]ublic policy disfavors "escape" clauses, whereby coverage purports to evaporate in the presence of other insurance . . . This disfavor

---

[67]  *Ibid.*
[68]  *See, e.g., Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co.*, 75 Cal.App.4th 739, 744 n. 1 (1999).
[69]  *See*, Exhs. 1, 3 & 5, Form 80-02-2000 (Rev. 4-01), Conditions, Other Insurance, p. 22 of 32 ("*Primary Insurance*.  This insurance is primary except when the Excess Insurance provision described below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with that other insurance by the method described in the Method of Sharing provision described below.  *Excess Insurance*.  This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis: A. that is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar insurance for your work; B. that is insurance that applies to property damage to premises rented to you or temporarily occupied by you with permission of the owner; C. if the loss arises out of aircraft, autos or watercraft (to the extent not subject to the Aircraft, Autos or Watercraft exclusion); D. that is insurance: 1. provided to you by any person or organization working under contract or agreement for you; or 2. under which you are included as an insured; or E. that is insurance under any Property section of this policy.  When this insurance is excess, we will have no duty to defend the insured against any suit if any other insurer has a duty to defend such insured against such suit.  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.  *Method of Sharing*.  If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this method, each insurer contributes equal amounts until it has paid its applicable limits of insurance or none of the loss remains, whichever comes first.").
[70]  *Dart Industries, Inc. v. Commercial Union Ins. Co.*, *supra*, 28 Cal.4th at 1079 ("*Dart Industries*"); *Montrose Chemical Corporation v. Superior Court* (2020) 9 Cal.5th 215, 231 ("*Montrose Chemical Corporation*").
[71]  *Montrose Chemical Corporation*, *supra*, 9 Cal.5th at 231.

should also apply, to a lesser extent, to excess-only clauses, by which carriers seek exculpation whenever the loss falls within another carrier's policy limit."[72]

49.     Consequently, whatever the other-insurance clauses in Navigators' Policy and Chubb's Policies provide, under modern law those clauses have no bearing on Navigators' and Chubb's obligations to VIZIO.[73]  Moreover, allocation of loss between one or more insurers is generally allocated equitably, most typically on a pro-rata basis, regardless of what their other-insurance clauses provide.[74]

50.     Turning to the assumption in Navigators' October 31, 2017 letter that Chubb had in fact paid for all of VIZIO's **Defense Costs** in connection with the Smart TV Litigation and MDL Case, that supposition was indeed false.  Chubb's obligation to pay for the cost of VIZIO's defense was subject to a statutory limitation, California Civil Code section 2860, that did not apply to Navigator's Policy.  For that reason and others, Chubb did not pay the full amount of VIZIO's **Defense Costs** in connection with the Smart TV Litigation and the MDL Case. Until on or about June 26, 2018, when Chubb and VIZIO reached a confidential settlement (hereinafter pled with more specificity and defined as the "Chubb Settlement Agreement"), Chubb's obligations to pay **Defense Costs** were and remained a controversy and dispute between Chubb and VIZIO.  Chubb's limited payments of VIZIO's **Defense Costs** in connection with the Smart TV Litigation and the MDL Case were compromises and were short of the actual **Defense Costs** incurred.

---

[72]   *Dart Industries, supra*, 28 Cal.4th at 1080 (quoting *CSE Ins. Group v. Northbrook Property & Casualty Co.*, 23 Cal.App.4th 1839, 1845 (1994), and citing *Argonaut Ins. Co. v. Transport Indem. Co.*, 6 Cal.3d 496, 508 (1972)).
[73]   *See, e.g., Dart Industries*, *supra*, 28 Cal.4th at 1080.
[74]   *See, e.g.*, *Dart Industries*, *supra*, 28 Cal.4th at 1080; *Commerce & Industry Ins. Co.*, 75 Cal.App.4th at 745; *Edmonson Prop. Mgmt. v. Kwock*, 156 Cal.App.4th 197, 203 (2007);, *Certain Underwriters at Lloyds, London v. Arch Specialty Ins. Co.*, 246 Cal.App.4th 418, 423, 436 (2017) (applying pro rata trend approach regardless of other insurance clause's location in policy, *i.e.*, whether in "conditions" or "coverage" section).

51.     Navigators' October 31, 2017 letter also reiterated the supposed application of Navigators' Policy's exclusions for "invasion of privacy" and the "deliberately fraudulent or criminal acts of any **Insured**," raised in Navigators' prior letters to VIZIO.[75]  Navigators asserted the claims in the Smart TV Litigation all arise out of such alleged activity by VIZIO.[76]

52.     Navigators further asserted that "because Vizio knowingly and willfully omitted material facts, the fraud by omission claim is precluded from coverage under Insurance Code § 533's preclusion of 'willful acts.'"[77]  In fact, there had not been and never was any such finding or adjudication made against VIZIO, and VIZIO denied the claimants' allegations to that effect.

53.     Navigators ultimately wrote that it "continues to proceed under full reservation of all rights and defenses available to it under the policy and the law," and that it could "disclaim reimbursement of any defense costs," "withdraw from reimbursement at any time," and "deny coverage for any settlement or judgment that may be assessed against [VIZIO] should facts and circumstances warrant."[78]

54.     On or about January 10 and 11, 2018, Mr. Kim of Akin Gump provided Greenan Peffer with copies of the updates and invoices provided to Navigators over the prior ninety (90) days, via e-mail and electronic download.  A true and correct copy of Mr. Kim's e-mail to Helen Chen of Greenan Peffer is attached hereto and incorporated herein as Exhibit "20."  In addition, on or about January 22, 2018, Mr. Kim e-mailed Greenan Peffer a liability and damages analysis for the Smart TV Litigation, for Navigators' use and consideration in connection with the upcoming mediation.

55.     On or about January 22, 2018, Mr. Sallander wrote to Mr. Wahlquist, reiterating Navigators' refusal to participate in any defense or indemnity of the

---

[75]  Exh. 19 at 4-5.
[76]  *Ibid.*
[77]  Exh. 19 at 6.
[78]  Exh. 19 at 6.

Smart TV Litigation, for the reasons stated in his letter of October 31, 2017. A true and correct copy of Mr. Sallander's letter of January 22, 2018 to Mr. Wahlquist is attached hereto and incorporated herein as Exhibit "21." In yet another reversal of Navigators' position, Mr. Sallander wrote that "[e]ven assuming Chubb elects to exhaust its policies, which are primary to the Navigators policy, Navigators will not be in a position to contribute to the settlement" in connection with the upcoming mediation, "even assuming there were any covered allegations, which there does not appear to be, based on the currently known information."[79] This letter further constituted a repudiation of Navigators' obligations under Navigators' Policy and applicable law.

56.    On or about January 26, 2018, VIZIO and the other parties to the Smart TV Litigation engaged in a mediation before the Hon. Vaughn Walker (Ret.). Mr. Sallander attended the mediation on behalf of Navigators. After the mediation, VIZIO, through its coverage counsel Mr. Wahlquist of Rutan & Tucker, informed Navigators of the parties' on-going negotiations, and requested that Navigators contribute to a settlement of the Smart TV Litigation. Navigators continued to refuse to contribute to the settlement.

57.    On or about February 2, 2018, Mr. Kim of Akin Gump provided Navigators with an update on the Smart TV Litigation and additional invoices. True and correct copies of Mr. Kim's letter of February 2, 2018 to Ms. Helen Chen of Greenan Peffer and the accompanying e-mail (redacted to remove attorney-client privileged communications and attorney work product) are attached hereto as Exhibit "22." On or about that same date, Ms. Chen of Greenan Peffer wrote to Mr. Kim to request copies of orders and consent decrees in pending litigation with the Federal Trade Commission, which Mr. Kim provided to Ms. Chen on or about February 5, 2018.

---

[79]  Ex. 21 at 9; *compare to*, Ex. 19 at 6 (asserting that Navigators' "obligation to reimburse defense costs will not arise until the loss exceeds the limits of the Chubb policy").

58.     On or about February 6, 2018, Mr. Kim of Akin Gump sent Navigators a further liability and damages analysis and update regarding the Smart TV Litigation, and on or about February 15, 2018, Mr. Kim of Akin Gump sent Ms. Chen of Greenan Peffer via e-mail copies of additional invoices for review and reimbursement by Navigators.  A true and correct copy of Mr. Kim's e-mail of February 15, 2018 to Ms. Chen (redacted to remove attorney-client privileged communications and attorney work product) is attached hereto as Exhibit "23."

59.     On or about February 19, 2018, Mr. Wahlquist of Rutan & Tucker e-mailed Mr. Sallander regarding a proposal from the mediator and asked whether Navigators would participate in the settlement were the proposal to be accepted.  Mr. Sallander did not respond to the e-mail.

60.     On or about February 26, 2018, Mr. Kim of Akin Gump provided Navigators with copies of additional invoices.  True and correct copies of Mr. Kim's letter of February 26, 2018 to Ms. Chen of Greenan Peffer and the accompanying e-mail (redacted to remove attorney-client privileged communications and attorney work product) are attached hereto as Exhibit "24."

61.     On or about March 2, 2018, Mr. Wahlquist of Rutan & Tucker e-mailed Mr. Sallander (counsel for Navigators) and asked whether Navigators would make a contribution to the settlement proposed by the mediator.  Attached hereto and incorporated herein as Exhibit "25" is a true and correct copy of Mr. Wahlquist's e-mail of March 2, 2018 to Mr. Sallander, redacted to remove confidential settlement information.  Navigators continued to fail, refuse and otherwise neglect to participate in the settlement.

62.     On or about March 5, 2018, the parties to the Smart TV Litigation tentatively settled the action, agreeing to a total payment by VIZIO which was well in excess of the aggregate policy limits of both Chubb's and Navigators' policies (the "Smart TV Settlement").  The Smart TV Settlement was reasonable under the circumstances because, *inter alia*, the damages the claimants in the Smart TV

Litigation claimed well exceeded VIZIO's insurance policy limits and defense of those claims would have consumed significant resources; VIZIO would face extensive additional **Defense Costs** to continue litigating the Smart TV Claims; and there was a risk of potential liability for the Smart TV Claims (which VIZIO denied, but as to which VIZIO could not be certain it would ultimately prevail).

63.     On or about June 26, 2018, VIZIO and Chubb reached a confidential settlement ("Chubb Settlement Agreement") whereby Chubb agreed to pay an amount (the "Settlement Sum") on behalf of VIZIO, which Settlement Sum was above and beyond amounts already paid by Chubb for some, but not all, of VIZIO's costs of defending the Smart TV Litigation.  Chubb allocated the Settlement Sum with three-fourths (¾) of the Settlement Sum allocated to indemnity (loss) obligations under Chubb's Policies, and ¼ allocated to Chubb's defense obligations under Chubb's Policies.  This is in addition to VIZIO's **Defense Costs** previously paid by Chubb.  In addition, Chubb agreed to assign to VIZIO its claims against defined "Other Insurers" – including Navigators and Arch – arising out of Chubb's payment of the Settlement Sum and defense costs for the Smart TV Litigation.  In exchange for Chubb's payment of the Settlement Sum and assignment, VIZIO agreed to release Chubb from any and all claims or rights to insurance coverage under Chubb's Policies with respect to the Smart TV Litigation.  Because the written terms of the Settlement Agreement between VIZIO and Chubb contain confidentiality provisions, VIZIO has not attached the Chubb Settlement Agreement to this Complaint, which will become part of the public record.  VIZIO will supply the Chubb Settlement Agreement to the Court and to Navigators' and Arch's counsels upon execution of an appropriate protective order and as and when permitted pursuant to the relevant disclosure provisions of the Chubb Settlement Agreement.

64.     On or about July 31, 2019, the United State District Court for the Central District of California, the Hon. Josephine L. Staton, presiding, approved the

1  Smart TV Settlement.  A true and correct copy of the Court's Order approving the

2  Smart TV Settlement is attached hereto and incorporated herein as Exhibit "26."

3      65.     The statutes of limitations for all claims against Navigators and Arch

4  were equitably tolled until at least August 14, 2019, when Judge Staton entered

5  judgment in the Smart TV Litigation.  *See*, *e.g.*, *Lambert v. Commonwealth Land*

6  *Title Ins. Co.* 53 Cal.3d 1072, 1077 (1991) ("Although the statutory period

7  commences upon the refusal to defend, it is equitably tolled until the underlying

8  action is terminated by a final judgment.").

9      66.     Over and above the amount of Chubb's Settlement Sum allocated to

10  indemnity under the Chubb Settlement Agreement, VIZIO itself paid in excess of

11  the cumulative limits of the policies issued by Chubb and Navigators to the

12  claimants in the Smart TV Settlement.

13      67.     To date, Navigators and Arch have failed and refused to meet their

14  obligations to provide a defense and indemnity to VIZIO in connection with the

15  Smart TV Litigation. Navigators disclaimed such an obligation, while Arch never

16  responded to VIZIO's notice of claim of defense.

17  **Application Of Navigators' And Arch's Policies To The Smart TV Litigation**

18      68.     Navigators' Policy and Arch's Policy imposed upon Navigators and

19  Arch a duty to indemnify VIZIO in connection with the Smart TV Litigation.

20      **A.     The Policies Are Claims-Made, Not Claims-Made-And-Reported**

21          **Policies.**

22      69.     As an initial matter, Navigators initially denied VIZIO's claim on

23  March 22, 2016 on the basis that VIZIO supposedly failed to give timely notice of

24  the Smart TV Litigation.  Ten months later, on January 31, 2017, Navigators

25  reversed its position and admitted VIZIO timely gave notice of the claim.  Indeed,

26  Navigators' wrongful and bad faith denial on this basis stemmed from a

27  fundamental misapprehension of Navigators' Policy as claims-made-and-reported

28  coverage for VIZIO, rather than claims-made coverage.  Among other things,

1 Navigators' Policy expressly states that it is "a claims-made policy . . . ."[80]

2 Navigators had no good faith basis for asserting otherwise.

3      70.    The "notice" provision upon which Navigators relied when it

4 erroneously deemed its Policy a "claims-made-and-reported" policy comes from

5 Navigators' Policy's General Terms and Conditions, Section VII, Notice. Par. A:

> As a condition precedent to their rights under this Policy in connection with any **Claim**, the **Insureds** must give the **Insurer** written notice of such **Claim** as soon as practicable after such **Claim** is made, but in no event later than sixty (60) days after the end of the **Policy Period**. Subject to the foregoing, written notice of a **Claim** will be deemed to have been given as soon as practicable if such notice is given not later than sixty (60) days after the Chairman of the Board of Directors, President, Chief Executive Officer, Chief Financial Officer, General Counsel, or Risk Manager of the **Company** first becomes aware of such **Claim**.

13 (Exh. 7, General Terms and Conditions, Section VII, Notice. Par. A.)  This clause is

14 a typical notice clause and does not render the policy a claims-made-and-reported

15 policy.

16      71.    An insured's burden of establishing an insurer's duty to pay defense

17 costs is rooted in well-established case law dealing with an insurer's duty to defend,

18 requiring only a showing of a potential for coverage under the policy.[81]  Under that

19 standard, an insurer's defense obligations depend on "[1] the terms of the policy,

20 [2] the allegations of the third party's complaint against the insured, [and] [3] all

21 facts known to the insurer from any source."[82]

---

[80] Exh. 7, Declarations.
[81] *See*, *Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 258-259 (2012); *Legacy Partners, Inc. v. Clarendon Am. Ins. Co*, 2010 WL 1495198, *5, 2010 U.S. Dist. LEXIS 36966, 10-12 (S.D. Cal. Apr. 14, 2010) (citing *Olympic Club v. Those Interested Underwriters*, 991 F.2d 497 (9th Cir. 1993) ("*Olympic Club*"), and holding that the duty to advance defense costs is triggered by a showing of a potential for coverage); *Scottsdale Ins. Co. v. Coapt Sys.*, 2013 WL 3146781, *4, 2013 U.S. Dist. LEXIS 86414, 10-11 (N.D. Cal. June 18, 2013) (same holding).
[82] Croskey, *et al.*, CAL. PRAC. GUIDE: CAL. INS. LIT., § 7:572 (The Rutter Group, rev. ed. June 2019); *see also*, *Hayward v. Centennial Ins. Co.*, 430 F.3d 989, 991 (9th Cir. 2005) ("an insurer has a duty to defend its insured when, comparing the

B. **The Smart TV Litigation Sought Damages Potentially Within the Policies' Insuring Clauses**

72.    The applicable Policies issued by Navigators and Arch obligate Navigators and Arch to cover VIZIO's **Loss** with regard to the Smart TV Litigation. Moreover, to trigger Navigators' and Arch's defense obligations under the Policies, VIZIO need only show that the Smart TV Litigation "'*potentially* seeks damages within the coverage of the policy.'"[83]  The precise claims pled are not dispositive; what matters is whether under the facts alleged, reasonably inferable, or otherwise known to Navigators, the complaint could be fairly amended to state a covered liability.[84]

73.    The claims asserted in the Smart TV Litigation come within the scope of Navigators' Policy's Insuring Clause.[85]  The complaints plainly allege that the **Company** is "legally obligated to pay . . . for a **Wrongful Act** [*i.e.* an 'actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty' by the **Company**]."[86]

74.    As stated above, Arch's Policy "follows form to" Navigators' Policy, such that the foregoing policy terms and analysis equally apply to Arch's Policy.[87]

_____

allegations in the third party complaint with the terms of the policy as well as considering extrinsic facts, there is '*any* potential for liability under the policy'" [citing *Horace Mann Ins. Co. v. Barbara B.*  4 Cal.4th 1076, 1081 (1993)] [italics original]).

[83]  *Olympic Club*, *supra*, 991 F.2d at 503 (italics in original) (citing *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275 (1966) ("*Gray v. Zurich*")); *Safeco Ins. Co. of America v. Andrews*, 915 F.2d 500, 502 (9th Cir. 1990) ("*Safeco*").

[84]  *Hartford Cas. Ins. Co. v. Swift Distribution, Inc*., 59 Cal. 4th 277, 287 (2014); *Hudson Ins. Co. v. Colony Ins. Co*., 624 F.3d 1264, 1267-1269  (9th Cir. 2010); *Barnett v. Fireman's Fund Ins. Co*., 90 Cal. App. 4th 500, 510 (2001).

[85]  As alleged above, Arch never responded to Vizio's notice of claim.

[86]  Exh. 7, Directors and Officers Liab. Coverage Part, Section I, Insuring Agreements, Par. A.

[87]  Exh. 7, Gen. Terms and Cndtns., Sec. II, Definitions, Pars. D, J; Exh. 8, Follow Form Excess Liab. Ins. Policy, Sec. 3, Definitions, Par. E & Declarations, Item 4.

**C.** **The Policies' Exclusions For "Loss . . . In Connection With Any Claim . . . For Any Actual Or Alleged: . . . Invasion Of Privacy . . ." Do Not Eliminate Coverage For All Of The Claims In The Smart-TV Litigation**

75.    Navigators asserted that the Smart TV Litigation is "based on alleged invasion of privacy," such that Navigators invoked Navigators' Policy's Section III, Exclusions, Par. A.4.a.:

> The Insurer will not be liable under this Coverage Part to make any payment of **Loss**, including **Costs of Defense**, in connection with any **Claim** made against any **Insured**: . . .

> For any actual or alleged:

> bodily injury, sickness, disease or death of any person, mental anguish, emotional distress, *invasion of privacy*, trespass, nuisance, wrongful entry or eviction, assault, battery, loss of consortium, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, defamation or slander . . . .[88]

76.    In actuality, while the Smart TV Litigation alleged *some* facts which *might* support a claim for "invasion of privacy," the complaints asserted "act[s], omission[s], error[s], misstatement[s], misleading statement[s] [and] neglect or breach of duty" within Navigators' Policy's Insurance Clause that plainly are *not* an invasion of privacy and therefore are *not* excluded by the Policy's Section III. Exclusions, ¶ A.4.a.  Navigators' analysis simply overlooked allegations in the complaints that were and are within the scope of Navigators' Policy's Insuring Clause, and which fall outside the reach of the exclusion that "[t]he Insurer will not be liable . . . to make any payment of **Loss**, including **Costs of Defense**, in connection with any **Claim** made against any **Insured** . . . For any actual or alleged: . . . invasion of privacy . . . ."

---

[88]   Exh. 7, Directors and Officers Liab. Coverage Part, Section III, Exclusions, Par. A.4.a. (italics added).

77.     Indeed, the **Claims** in the Smart TV Litigation set forth above at Paragraph 19 included numerous allegations seeking "compensatory damages" (and thus **Loss**) from VIZIO for **Wrongful Acts** (*i.e.,* an "actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty") by the **Company**, which **Claims** did not constitute "a[] **Claim** made against any **Insured** . . . For any actual or alleged: . . . invasion of privacy . . . ."  Some such **Claims** that do not involve a privacy interest include, but are not necessarily limited to, alleged violations of:

a.     California's Consumers Legal Remedies Act, California Civil Code, section 1750, including its provisions against mischaracterizations of a product's characteristics, uses, benefits, standards and quality, and having an intent not to sell goods as advertised.[89]  This claim falls squarely within the scope of Navigators' Policy's Insuring Clause and it is plainly not within the scope of Navigators' exclusion for invasion of privacy.

b.     Florida's Deceptive and Unfair Trade Practices Act (the "FDUTPA") (Fla. Stat., §§ 501.201, *et seq.*), which seeks to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce."[90] Predicate acts in violation of this statute plainly need not involve an "invasion of privacy."  Moreover, this claim involves a contention that plaintiffs were somehow misled which comes within the scope of Navigators' Policy's Insuring Clause.

c.     Violation of New York General Business Law, section 349, addressing all "[d]eceptive acts or practices[]."[91]  As with the FDUTPA, predicate acts in violation of this statute plainly need not involve an "invasion of privacy." This claim also involves a contention that plaintiffs were somehow misled, which

---

[89]  Cal. Civ. Code, § 1770(5), (7) & (9).
[90]  Fla. Stat., § 501.202(2); see, also, Fla. Stat., § 501.204(1).
[91]  N.Y. Gen. Bus. Law, § 349.

comes within Navigators' Policy's Insuring Clause.

          d.     Massachusetts' Unfair and Deceptive Trade Statute, which prohibits all "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"[92]  This claim is similar to the FDUTPA and New York's General Business law and need not involve an "invasion of privacy."  What is more, this claim does involve a contention that plaintiffs were somehow misled, which comes within Navigators' Policy's Insuring Clause.

          e.     Washington's Consumer Protection Act ("WCPA"), which declares unlawful all "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"[93]  This claim is similar to the FDUTPA, New York's General Business law, and Massachusetts' Unfair and Deceptive Trade Statute and need not involve an "invasion of privacy."  What is more, this claim does involve a contention that plaintiffs were somehow misled, which comes within the scope of Navigators' Policy's Insuring Clause.

          f.     Common law claims for unjust enrichment/quasi-contract, fraud by omission and negligent omission, based upon VIZIO's supposed use of information and disclosures (or lack thereof) regarding the same, none of which involve an "invasion of privacy."

     78.     Additionally, the **Claims** in the Smart TV Litigation set forth above at Paragraphs 19a, b, c, e, f, and l included other allegations seeking "compensatory damages" (and thus **Loss**) from VIZIO for **Wrongful Acts** (*i.e.* an "actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty") by the **Company** that, notwithstanding a potential relationship to a privacy interest, did not constitute an "invasion of privacy" recognized by California law, which includes "four species of 'invasion of privacy,'" to wit, "[1] public disclosure of

---

[92]  Mass. Gen. Laws, ch. 93A, § 2(a).
[93]  Wa. St., § 19.86.020.

private facts; [2] intrusion upon seclusion; [3] false light; and [4] the right to publicity (misappropriation of name or likeness)."[94]  To the contrary, even if nominally denominated as "privacy" claims, the claims in fact largely addressed the storage and/or use of technical consumer data, and do not necessarily come within the four species of "invasion of privacy" claims in California.[95]

79.     As stated above, Arch's Policy "follows form to" Navigators' Policy, such that the foregoing policy terms and analysis equally apply to Arch's Policy.[96]

**D.     The Policies' Exclusions For "Loss . . . Brought About Or Contributed To Or By: . . . a. The Gaining By Any Insured Of Any Profit, Advantage Or Remuneration To Which Such Insured Was Not Legally Entitled; Or . . . b. The Deliberately Fraudulent Or Criminal Acts Of Any Insured . . . " Do Not Eliminate Coverage For All Of The Claims In The Smart TV Litigation**

80.     With regard to Navigators' reliance upon Exclusions A.1(a) and (b), which exclude **Loss** "brought about or contributed to or by: . . . a. gaining by any Insured of any profit, advantage or remuneration to which [the] Insured was not legally entitled," as well as "b. the deliberately fraudulent or criminal acts of any Insured," there is an explicit policy provision that "this exclusion shall only apply if it is finally adjudicated such conduct in fact occurred."[97]  Here, no such adjudication – final or otherwise – ever occurred.

81.     Moreover, numerous of the **Claims** in the Smart TV Litigation did not rely upon allegations of payment to which VIZIO was "not legally entitled" or

---

[94]   Guzzetta, CAL. PRAC. GUIDE: PRIVACY LAW, ¶ 2:260 (The Rutter Group rev. ed. March 2020).

[95]   18 U.S.C., § 2710(b)(1) (Video Privacy Protection Act); 18 U.S.C., § 2510, *et. seq.* (Federal Wiretap Act); Cal. Pen. Code, § 631 (California Invasion of Privacy Act); Cal. Civ. Code, §§ 1798.81(b), (c), 1799.3(a).

[96]   Exh. 7, Gen. Terms and Cndtns., Sec. II, Definitions, Pars. D, J; Exh. 8, Follow Form Excess Liab. Ins. Policy, Sec. 3, Definitions, Par. E & Declarations, Item 4.

[97]   Exh. 7, Directors and Officers Liab. Coverage Part, Section III, Exclusions, Par. A(1)(a)-(b).

otherwise allege "deliberate" fraud or criminal acts.  These **Claims** include but are not limited to:

      a.    California's Consumers Legal Remedies Act, which prohibits mischaracterizing a product's characteristics, uses, benefits, standards and quality.[98]

      b.    California Civil Code, section 1798.81, which requires that a business "take all reasonable steps to dispose, or arrange for the disposal, of customer records within its custody or control containing personal information when the records are no longer to be retained by the business by . . . (b) erasing, or (c) otherwise modifying the personal information in those records to make it unreadable or undecipherable through any means."[99]

      c.    California Civil Code, section 1799.3, which precludes any "person providing video recording sales or rental services" from "disclos[ing] any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual."[100]

      d.    The so-called Video Privacy Protection Act, which prohibits "video tape service provider[s]" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider."[101]

      e.    Common law claims based upon VIZIO's supposed use of information and disclosures (or lack thereof) regarding the same.

    82.    As stated above, Arch's Policy "follows form to" Navigators' Policy, such that the foregoing policy terms, and analysis equally apply to Arch's Policy.[102]

---

[98] Cal. Civ. Code, § 1770(5), (7) & (9).
[99] Cal. Civ. Code, § 1798.81(b), (c).
[100] Cal. Civ. Code, § 1799.3(a).
[101] 18 U.S.C., § 2710(b)(1).
[102] Exh. 7, Gen. Terms and Cndtns., Sec. II, Definitions, Pars. D, J; Exh. 8, Follow Form Excess Liab. Ins. Policy, Sec. 3, Definitions, Par. E & Declarations, Item 4.

# FIRST CLAIM FOR RELIEF

## (For Breach of Written Contract of Insurance Against Navigators)

83.     VIZIO realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 82 of this Complaint as though set forth in their entirety.

84.     Under the terms of Navigators' Policy, Navigators, since at least February 2, 2016, was obligated to provide payment for VIZIO's **Loss**, including but not limited to payment pursuant to the Smart TV Settlement, as well as VIZIO's **Costs of Defense**, including but not limited to VIZIO's reasonable and necessary legal fees, costs and expenses incurred in investigation of the Smart TV Claims and Smart TV Litigation.[103]

85.     VIZIO performed all of its obligations under Navigators' Policy, or VIZIO's performance has been waived, suspended or otherwise excused.  Further, any and all conditions precedent, if any, to Navigators' obligations to perform its duties under Navigators' Policy, have either occurred, or occurrence of such conditions has been waived, suspended or otherwise excused.

86.     In breach of its duties under Navigators' Policy, Navigators failed to afford VIZIO the benefits of Navigators' Policy, including but not limited to as set forth herein at Paragraphs 24-82.

87.     As a direct and proximate result of Navigators' above-described breaches of its contractual duties to VIZIO, VIZIO has been damaged in an amount in excess of this Court's jurisdictional minimum, the amount of which will be proven at trial, but which VIZIO is informed and believes and based thereon alleges is at least $10,000,000, together with interest on that sum at the legal rate.

/ / /

/ / /

/ / /

---

[103] Exh. 7, Gen. Terms and Cndtns., Sec. II, Definitions, Pars. D, J.

### SECOND CLAIM FOR RELIEF

### (For Breach of Written Contract of Insurance Against Arch)

88.     VIZIO realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 87 of this Complaint as though set forth in their entirety.

89.     Under the terms of Arch's Policy, Arch, since at least February 2, 2016, was obligated to provide payment for VIZIO's **Loss**, including but not limited to payment pursuant to the Smart TV Settlement, as well as VIZIO's **Costs of Defense**, including but not limited to VIZIO's reasonable and necessary legal fees, costs and expenses incurred in investigation of the Smart TV Claims and Smart TV Litigation.[104]

90.     VIZIO performed all of its obligations under Arch's Policy, or VIZIO's performance has been waived, suspended or otherwise excused.  Further, any and all conditions precedent, if any, to Arch's obligations to perform its duties under Arch's Policy, have either occurred, or occurrence of such conditions has been waived, suspended or otherwise excused.

91.     In breach of its duties under Arch's Policy, Arch failed to afford VIZIO the benefits of Arch's Policy, including but not limited to as set forth herein at Paragraphs 23 and 66-82.

92.     As a direct and proximate result of Arch's above-described breaches of its contractual duties to VIZIO, VIZIO has been damaged in an amount in excess of this Court's jurisdictional minimum, the amount of which will be proven at trial, but which VIZIO is informed and believes and based thereon alleges is at least $10,000,000, together with interest on that sum at the legal rate.

/ / /

/ / /

---

[104] Exh. 7, Gen. Terms and Cndtns., Sec. II, Definitions, Pars. D, J; Exh. 8, Follow Form Excess Liab. Ins. Policy, Sec. 3, Definitions, Par. E & Declarations, Item 4.

## THIRD CLAIM FOR RELIEF

### (For Tortious Breach of the Covenant of Good Faith and Fair Dealing Against Navigators)

93.     VIZIO realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 92 of this Complaint as though set forth in their entirety.

94.     Navigators has breached the implied covenant of good faith and fair dealing inherent in Navigators' Policy by, among other things:

a.     Knowingly, intentionally and willfully or, alternatively, at a minimum, recklessly or negligently, and unreasonably without proper cause omitting to conduct a full, fair, and thorough investigation of all of the bases of the Smart TV Claims and Smart TV Litigation;

b.     Knowingly, intentionally and willfully or, alternatively, at a minimum, recklessly or negligently, and unreasonably without proper cause failing to properly and timely communicate with VIZIO and its representatives and agents;

c.     Knowingly, intentionally and willfully or, alternatively, at a minimum, recklessly or negligently, and unreasonably without proper cause failing to afford VIZIO the benefits of Navigators' Policy, including failing to provide payment to or on behalf of VIZIO for its insured **Loss** and/or **Costs of Defense**; and,

d.     Knowingly, intentionally and willfully or, alternatively, at a minimum, recklessly or negligently, and unreasonably without proper cause omitting to disclose to VIZIO all benefits, coverage, time limits and other provisions of Navigators' Policy that may have applied to the claims asserted against VIZIO.

95.     As a direct and proximate result of Navigators' breach of the implied covenant of good faith and fair dealing in Navigators' Policy as alleged herein, VIZIO has been damaged in an amount in excess of this Court's jurisdiction, to be proven at trial, but which VIZIO presently believes to be not less than $10,000,000.

/ / /

96.     As a further direct and proximate result of above-described breaches of the covenant of good faith and fair dealing implicit in Navigators' Policy, VIZIO has been forced to secure the services of legal counsel and incur the corollary legal fees and costs to secure the benefits due to VIZIO under Navigators' Policy.  VIZIO has been damaged as a result of the incurrence of the legal fees and costs in an amount to be proven at trial.

97.     Navigators' conduct has been fraudulent and malicious, and VIZIO is entitled to recover exemplary damages therefore under California Civil Code, section 3294.  Navigators' actions were malicious in that Navigators intended those actions to cause injury to VIZIO.   Navigators' actions were also malicious in that Navigators knew it was obligated to act for VIZIO's benefit, but Navigators nonetheless refused to do so.  Navigators' actions were despicable conduct carried on by Navigators with the willful and conscious disregard for the rights of VIZIO to receive the benefits under Navigators' Policy.  Navigators' conduct was also malicious in that its conduct was intended to cause injury and discourage VIZIO from pursuing VIZIO's legal rights to benefits under Navigators' Policy by forcing VIZIO to incur legal costs and attorneys' fees to secure these benefits to which Navigators knew VIZIO to be entitled under Navigators' Policy.

98.     The officers, directors, and managing agents of Navigators were acting within the course and scope of their employment and agency, and Navigators has authorized and ratified the wrongful acts and conduct alleged herein; moreover, Navigators itself has engaged in the wrongful acts and conduct alleged herein which constitute oppression, fraud and malice.

/ / /

/ / /

/ / /

/ / /

/ / /

## FOURTH CLAIM FOR RELIEF

### (For Tortious Breach of the Covenant of Good Faith and Fair Dealing Against Arch)

99.    VIZIO realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 98 of this Complaint as though set forth in their entirety.

100.    Arch has breached the implied covenant of good faith and fair dealing inherent in Arch's Policy by, among other things:

a.    Knowingly, intentionally and willfully or, alternatively, at a minimum, recklessly or negligently, and unreasonably without proper cause failing to respond to VIZIO's timely notice of claim;

b.    Knowingly, intentionally and willfully or, alternatively, at a minimum, recklessly or negligently, and unreasonably without proper cause omitting to conduct a full, fair, and thorough investigation of all of the bases of the Smart TV Claims and Smart TV Litigation;

c.    Knowingly, intentionally and willfully or, alternatively, at a minimum, recklessly or negligently, and unreasonably without proper cause failing to properly and timely communicate with VIZIO and its representatives and agents;

d.    Knowingly, intentionally and willfully or, alternatively, at a minimum, recklessly or negligently, and unreasonably without proper cause failing to afford VIZIO the benefits of Arch's Policy, including failing to provide payment to or on behalf of VIZIO for its insured **Loss** and/or **Costs of Defense**; and,

e.    Knowingly, intentionally and willfully or, alternatively, at a minimum, recklessly or negligently, and unreasonably without proper cause omitting to disclose to VIZIO all benefits, coverage, time limits and other provisions of Arch's Policy that may have applied to the claims asserted against VIZIO.

101.    As a direct and proximate result of Arch's breach of the implied covenant of good faith and fair dealing in Arch's Policy as alleged herein, VIZIO

1   has been damaged in an amount in excess of this Court's jurisdiction, to be proven

2   at trial, but which VIZIO presently believes to be not less than $10,000,000.

3       102.   As a further direct and proximate result of above-described breaches of

4   the covenant of good faith and fair dealing implicit in Arch's Policy, VIZIO has

5   been forced to secure the services of legal counsel and incur the corollary legal fees

6   and costs to secure the benefits due to VIZIO under Arch's Policy.  VIZIO has been

7   damaged as a result of the incurrence of the legal fees and costs in an amount to be

8   proven at trial.

9       103.   Arch's conduct has been fraudulent and malicious, and VIZIO is

10   entitled to recover exemplary damages therefore under California Civil Code,

11   section 3294.  Arch's actions were malicious in that Arch intended those actions to

12   cause injury to VIZIO.   Arch's actions were also malicious in that Arch knew it was

13   obligated to act for VIZIO's benefit, but Arch nonetheless refused to do so.  Arch's

14   actions were despicable conduct carried on by Arch with the willful and conscious

15   disregard for the rights of VIZIO to receive the benefits under Arch's Policy.

16   Arch's conduct was also malicious in that its conduct was intended to cause injury

17   and discourage VIZIO from pursuing VIZIO's legal rights to benefits under Arch's

18   Policy by forcing VIZIO to incur legal costs and attorneys' fees to secure these

19   benefits to which Arch knew VIZIO to be entitled under Arch's Policy.

20       104.   The officers, directors, and managing agents of Arch were acting

21   within the course and scope of their employment and agency, and Arch has

22   authorized and ratified the wrongful acts and conduct alleged herein; moreover,

23   Arch itself has engaged in the wrongful acts and conduct alleged herein which

24   constitute oppression, fraud and malice.

25   / / /

26   / / /

27   / / /

28   / / /

## FIFTH CLAIM FOR RELIEF

### (For Equitable Contribution Or Indemnity [As Assigned By Chubb] Against Navigators)

105.   VIZIO realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 104 of this Complaint as though set forth in their entirety.

106.   Chubb assigned to VIZIO Chubb's claims against defined "Other Insurers" – including but not limited to Navigators – arising out of Chubb's payment of the Settlement Sum and defense costs for the Smart TV Litigation.

107.   By the terms of the Chubb Policies, and Navigators' Policy, Chubb and Navigators both undertook to insure VIZIO against defined "loss" as defined by the respective Policies.  The claimants in the Smart TV Litigation alleged that the **Company** is "legally obligated to pay . . . for a **Wrongful Act** [*i.e.* an 'actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty' by the **Company**]" within the terms of Navigators' Policy.[105]  In addition, VIZIO incurred **Costs of Defense** coming within the terms of Navigators' Policy as a result of the Smart TV Litigation and Smart TV Claims.

108.   All conditions precedent to the obligation of Navigators to indemnify VIZIO – including as to all **Loss** and/or **Costs of Defense** – were satisfied, waived or excused.

109.   Chubb both partially defended and partially indemnified VIZIO against the Smart TV Litigation and Smart TV Claims, pursuant to the terms and conditions of Chubb's Policies.

110.   VIZIO's risk of loss and **Loss** represented a common obligation of Chubb and Navigators.

/ / /

---

[105] Exh. 7, Directors and Officers Liab. Coverage Part, Section I, Insuring Agreements, Par. A.

111.   By reason of Navigators' failure and refusal to discharge its insurance obligation to VIZIO, Chubb incurred and/or paid more than its equitable share of the moneys paid and incurred to defend and indemnify VIZIO from its liabilities and **Loss** and/or **Costs of Defense** in the Smart TV Litigation.  More specifically, Chubb was required to pay, and did pay, millions of dollars on VIZIO's behalf, in order to effectuate the Smart TV Settlement.  In addition to amounts paid in connection with the Smart TV Settlement, Chubb paid millions of additional dollars toward VIZIO's costs of defending the Smart TV Litigation.

112.   Under equitable principals, Chubb's assignee VIZIO is entitled to an award of monetary damages representing contribution or indemnity in an amount that would restore Chubb to its rightful and equitable position had Navigators paid a fair and equitable proportionate share of the total costs incurred, to equalize the common burden shared by these co-insurers.

## SIXTH CLAIM FOR RELIEF

### (For Equitable Contribution Or Indemnity [As Assigned By Chubb] Against Arch)

113.   VIZIO realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 112 of this Complaint as though set forth in their entirety.

114.   Chubb assigned to VIZIO Chubb's claims against defined "Other Insurers" – including but not limited to Arch – arising out of Chubb's payment of the Settlement Sum and defense costs for the Smart TV Litigation.

115.   By the terms of the Chubb Policies, and Arch's Policy, Chubb and Arch both undertook to insure VIZIO against defined "loss" as defined by the respective Policies.  The claimants in the Smart TV Litigation alleged that the **Company** is "legally obligated to pay . . . for a **Wrongful Act** [*i.e.* an 'actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach

of duty' by the **Company**]" within the terms of Arch's Policy.[106]  In addition, VIZIO incurred **Costs of Defense** coming within the terms of Arch's Policy as a result of the Smart TV Litigation and Smart TV Claims.

116.   All conditions precedent to the obligation of Arch to indemnify VIZIO – including as to all **Loss** and/or **Costs of Defense** – were satisfied, waived or excused.

117.   Chubb both partially defended and partially indemnified VIZIO against the Smart TV Litigation and Smart TV Claims, pursuant to the terms and conditions of Chubb's Policies.

118.   VIZIO's risk of loss and **Loss** represented a common obligation of Chubb and Arch.

119.   By reason of Arch's failure and refusal to discharge its insurance obligation to VIZIO, Chubb incurred and/or paid more than its equitable share of the moneys paid and incurred to defend and indemnify VIZIO from its liabilities and **Loss** and/or **Costs of Defense** in the Smart TV Litigation.  More specifically, Chubb was required to pay, and did pay, millions of dollars on VIZIO's behalf, in order to effectuate the Smart TV Settlement.  In addition to amounts paid in connection with the Smart TV Settlement, Chubb paid several millions more dollars toward VIZIO's costs of defending the Smart TV Litigation.

120.   Under equitable principals, Chubb's assignee VIZIO is entitled to an award of monetary damages representing contribution or indemnity, to restore Chubb to its rightful and equitable position had Arch paid a fair and equitable proportionate share of the total costs incurred, to equalize the common burden shared by these co-insurers.

/ / /

/ / /

---

[106] Exh. 7, Directors and Officers Liab. Coverage Part, Section I, Insuring Agreements, Par. A; Exh. 8, Follow Form Excess Liab. Ins. Policy, Sec. 3, Definitions, Par. E & Declarations, Item 4.

## SEVENTH CLAIM FOR RELIEF

### (For Declaratory Relief Against Navigators And Arch)

121.    VIZIO realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 120 of this Complaint as though set forth in their entirety.

122.    An actual controversy now exists within the meaning of California Code of Civil Procedure, section 1060 and 28 U.S.C., section 2201, between VIZIO, on the one hand, and Navigators and Arch, on the other hand, regarding Navigators' and Arch's obligations and duties under their respective Policies in connection with the Smart TV Litigation and the Smart TV Claims.

123.    VIZIO asserts and alleges that, as set forth herein, Navigators and Arch were and are obligated to indemnify VIZIO as against the **Claims** in the Smart TV Litigation alleging that the **Company** is "legally obligated to pay . . . for a **Wrongful Act** [*i.e.* an 'actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty' by the **Company**]," as well as VIZIO's **Costs of Defense** incurred as a result of the Smart TV Litigation and Smart TV Claims.[107]

124.    VIZIO further asserts and alleges – pursuant to the claim for equitable contribution or indemnity as assigned by Chubb – that equity requires that Navigators and Arch contribute to the indemnity and defense thus far paid entirely and solely by Chubb to and on behalf of VIZIO in connection with the Smart TV Litigation.

125.    VIZIO is informed and believes and based thereon alleges that Navigators and Arch refute these assertions and allegations.

126.    Pursuant to California Code of Civil Procedure, section 1060 and 28 U.S.C., section 2201, VIZIO seeks a judicial determination of the rights and duties

---

[107] Exh. 7, Directors and Officers Liab. Coverage Part, Section I, Insuring Agreements, Par. A; Exh. 8, Follow Form Excess Liab. Ins. Policy, Sec. 3, Definitions, Par. E & Declarations, Item 4.

1  as to which VIZIO, Navigators and Arch dispute each other's contentions as
2  described herein above.

3      127.   VIZIO asserts and contends that a declaratory judgment is both
4  necessary and proper at this time for the Court to determine the respective rights and
5  liabilities of the parties regarding their obligations to pay for the defense and
6  indemnity of VIZIO in the Smart TV Litigation and as to the Smart TV Claims.

7                                  **PRAYER**

8      **WHEREFORE**, VIZIO prays for judgment against Navigators and Arch, as
9  follows:

10     1.     For compensatory and consequential damages in an amount to be proven
11  at trial;

12     2.     For punitive damages in an amount to be proven at trial;

13     3.     For a judgment declaring that Navigators and Arch were and are
14  obligated to indemnify VIZIO as against the **Claims** in the Smart TV Litigation
15  alleging that the **Company** is "legally obligated to pay . . . for a **Wrongful Act** [*i.e.*
16  an 'actual or alleged act, omission, error, misstatement, misleading statement, neglect
17  or breach of duty' by the **Company**]" (Exh. 7, Directors and Officers Liability
18  Coverage Part, Section I, Insuring Agreements, Par. A; Exh. 8, Follow Form Excess
19  Liab. Ins. Policy, Section 3, Definitions, Par. E & Declarations, Item 4) as well as
20  VIZIO's **Costs of Defense** incurred as a result of the Smart TV Litigation and Smart
21  TV Claims;

22     4.     For a judgment declaring that the costs associated with the indemnity
23  and defense of VIZIO should be equitably apportioned between and among Chubb,
24  Navigators and Arch under applicable law and equitable principles;

25     5.     For attorneys' fees incurred to obtain the benefits due and owing to
26  VIZIO under Navigators' Policy and Arch's Policy;

27     6.     For costs of suit incurred herein;

28     7.     For prejudgment interest at the maximum rate allowable by law; and,

8.      For such other relief as the Court may deem just and proper.

Dated:  July 30, 2020                    RUTAN & TUCKER, LLP

                                         By: _____
                                             Lisa N. Neal
                                             Attorneys for Plaintiff
                                             VIZIO, INC.