**O**

# United States District Court
# Central District of California

VIZIO, INC.,

Plaintiff,

v.

ARCH INSURANCE COMPANY,

Defendant.

Case № 2:20-CV-06864-ODW (ASx)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [63]**

## I. INTRODUCTION

Plaintiff Vizio, Inc. initiated this action against Arch Insurance Company and Navigators Insurance Company (together, "Defendants") based on its claim that Defendants failed to provide benefits pursuant to the terms of their primary and excess insurance policies. (*See generally* First Am. Compl. ("FAC"), ECF No. 27.) On July 15, 2021, Vizio filed the operative third amended complaint. (Third Am. Compl. ("TAC"), ECF No. 62.) Arch now moves to dismiss the TAC under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Mot. to Dismiss ("Motion" or "Mot."), ECF No. 63.) For the following reasons, the Court **GRANTS** Arch's Motion.[1]

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Arch issued an insurance policy ("Arch Policy") to Vizio for the policy period December 31, 2013, through June 30, 2015. (TAC ¶ 14, Ex. 8 ("Arch Policy"), ECF No. 62-8.) The Arch Policy "follows form" and is in excess to the primary policy issued by Navigators Insurance Company (the "Navigators Policy"). (Arch Policy § 1; TAC ¶ 9, Ex. 7 ("Navigators Policy"), ECF No. 62-7.) As an excess insurance policy, the Arch Policy provides coverage only after exhaustion of the underlying primary policy limit, which includes a $100,000 retention and a $5 million limit of liability. (TAC ¶¶ 9, 14.)

Between November 2015 and October 2017, consumers filed a series of lawsuits against Vizio pertaining to its Smart TV products ("Smart TV Litigation"). (*Id.* ¶ 19.) On February 2 and 3, 2016, Vizio notified Arch and Navigators of the multiple pending and served actions in the Smart TV Litigation. (*Id.* ¶ 23.) On February 8, 2016, Arch responded to Vizio, stating that it would "be reviewing the information that has been provided" and upon "complet[ing] our review, we will provide our coverage analysis." (*Id.* ¶ 25, Ex. 11, ECF 62-11.) Aside from a communication regarding a claim handler reassignment in May 2016, Arch never substantively responded to Vizio's initial notification. (*Id.* ¶¶ 27, 28.)

According to Vizio, Navigators wrongfully denied coverage of the Smart TV Litigation, and Arch failed to timely accept or deny Vizio's claim. (*See id.* ¶¶ 30, 32, 34.) The last of Vizio's communications with Arch occurred on June 16, 2016, when Vizio forwarded Navigators's coverage denial letter to Arch. (*Id.* ¶ 30.) Vizio contends that "Arch conducted no further analysis or review regarding coverage, instead blindly adopting Navigators's denial of coverage for its own, and thus denying Vizio's claim." (*Id.* ¶ 33.)

On March 15, 2018, Vizio settled the Smart TV Litigation for $17 million. (*Id.* ¶ 71.) Vizio and its general liability insurer, Chubb & Son, reached a confidential settlement agreement whereby Chubb paid approximately $10.77 million in

connection with the Smart TV litigation, including $6 million allocated to settlement and approximately $4.77 million allocated to costs of defense. (*Id.* ¶ 72.) Vizio claims that the amount it and Chubb paid to settle the Smart TV Litigation exceeds the Underlying Limit of the Arch Policy, and thus, Arch is obligated to extend benefits pursuant to the terms of the Arch Policy. (*Id.* ¶ 74.) Specifically, Vizio alleges it paid "approximately $16,183,298.93 in connection with the Smart TV litigation, including $11 million allocated for settlement and $5,183,298.93 allocated to Costs of Defense." (*Id.* ¶ 73.)

On July 30, 2020, Vizio initiated this action against Arch and Navigators based on its claim that Defendants failed to provide benefits pursuant to the terms of their primary and excess insurance policies. (*See generally* FAC.) The Court granted Arch's first motion to dismiss Vizio's claims of breach of contract because Vizio failed to allege exhaustion of the Underlying Limit and thus could not show that Arch's obligations, as the excess insurer, were triggered. (*See* Order Granting First Mot. Dismiss ("Order MTD"), ECF No. 45; Arch Policy.) Vizio now asserts claims against Arch for (1) breach of written contract; (2) breach of the covenant of good faith and fair dealing; (3) equitable contribution; and (4) declaratory judgment. (TAC ¶¶ 99–103, 110–115, 124–139.) Arch now moves to dismiss Vizio's TAC for failure to state a claim.[2] (Mot.) The Motion is fully briefed. (Opp'n, ECF No. 66; Reply, ECF No. 67.) As explained below, the Court **GRANTS** Arch's Motion.

## III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v.*

[2] On December 21, 2021, Vizio dismissed Navigators from this action. (Stip., ECF No. 125.) Thus, the Motion and this Order only apply to claims asserted against Arch.

*Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

Vizio contends that Arch breached the Arch Policy by (1) failing to provide a defense or indemnify Vizio in connection with the Smart TV Litigation, and (2) failing to timely accept or deny Vizio's claim. (TAC ¶¶ 24–34, 77, 102.) Vizio also asserts that Arch is liable for equitable contribution and must indemnify Chubb for a portion of the Smart TV Litigation defense costs. (*Id.* ¶¶ 124–32.)

**A. Breach of Contract**

"Primary insurance refers to the first layer of coverage, whereby 'liability attaches immediately upon the happening of the occurrence that gives rise to liability.'" *Montrose Chem. Corp. v. Superior Ct. of Los Angeles Cnty.*, 9 Cal. 5th 215, 222 (2020), *as modified* (May 27, 2020) (quoting *Olympic Ins. Co. v. Emps. Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 597 (1981)). By contrast, excess insurance "attaches upon the exhaustion of underlying insurance coverage for a claim." *Id.* (quoting *County of San Diego v. Ace Prop. & Cas. Ins. Co.*, 37 Cal. 4th 406, 416, n.4 (2005)). "As a general rule, under California law the primary insurer alone owes a duty to defend" and "[i]n the absence of contract language to the contrary, the excess carrier has no right or duty to participate in the defense until the primary policy limits are exhausted." *Ticor Title Ins. Co. v. Emps. Ins. of Wausau*, 40 Cal. App. 4th 1699, 1707 (1995); *see also Signal Cos., Inc. v. Harbor Ins. Co.*, 27 Cal. 3d 359, 368 (1980) ("[T]he primary insurer . . . is solely liable for the costs of defense if the judgment does not exceed primary coverage.").

The excess insurer's obligations begin only once a certain level of loss or liability is reached, i.e., once underlying limits are exhausted. *Montrose Chem. Corp.*, 9 Cal. 5th at 222–23 (2020) (citing Rest., Liability Insurance, § 39, com. d, p. 338); *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994). If, however, the recovery exceeds the primary limits, then the excess carrier may be required to share in the cost of defense. *Travelers Ins. Co. v. Norwich Union Fire Ins. Soc.*, 221 Cal. App. 2d 150, 153 (1963).

An excess insurer's obligations are not triggered prior to exhaustion even where the claim might invade the excess coverage. *Travelers Cas. & Sur. Co. v. Am. Int'l Surplus Lines Ins. Co.*, 465 F. Supp. 2d 1005, 1022 (S.D. Cal. 2006); *Signal*, 27 Cal. 3d at 359. In *Signal*, the California Supreme Court decided a dispute between a primary and an excess insurer where the primary insurer had undertaken the insured's defense and then sought to recover some of the defense costs against the

excess insurer. 27 Cal. 3d at 359. Despite the excess insurer being apprised of the insured's claims for coverage throughout the litigation and being involved in certain settlements of the underlying claims, the court found that the duties of the excess insurer did not "require the excess carrier to participate in the defense of the insured as soon as it is notified of the claim, and even though the primary insurance coverage has not as yet been exhausted." *Id.* at 367.

That case, as this one, involved circumstances where the "exhaustion of primary coverage and the settlement of all claims occurred simultaneously" and all defense costs were incurred prior to the request that the excess contribute to any settlement and costs of defense. *Id.* at 365. An excess insurer's duties are triggered by exhaustion of the primary coverage, not by being put on notice that a claim might invade excess coverage. *See id.* at 366 (rejecting the notion that "once the excess insurer has been given notice that the [claim] against its insured might invade the excess coverage . . . the excess insurer should be obligated to participate immediately in the defense"). Such a position would essentially make the excess insurer a coinsurer with a "coextensive duty to defend." *Id.*

Here, the Arch Policy "provides excess coverage after exhaustion of the Underlying Limit." (Arch Policy § 1.) The Underlying Limit is defined as "the aggregate sum of all limits of liability of all Underlying Insurance." (*Id.* § 3F.) The Underlying Insurance is defined as the Primary Policy (i.e., Navigators Policy) and any Underlying Excess Policies. (*Id.* § 3E.) The Arch Policy provides that the "Underlying Limit shall be exhausted by payment . . . of covered Loss by the insurers of the Underlying Insurance" (i.e., Navigators), "the Insureds" (i.e., Vizio), "or any DIC Insurer." (*Id.* § 2A.) The Navigators Policy has a $5 million limit of liability and a $100,000 per claim retention. (*See* Navigators Policy.)

In the operative complaint, Vizio alleges it paid "approximately $16,183,298.93 in connection with the Smart TV litigation, including $11 million allocated for settlement and $5,183,298.93 allocated to Costs of Defense," amounts for which no

insurer or other party reimbursed Vizio. (TAC ¶ 73.) Although Vizio failed to allege exhaustion of the Underlying Limit in the FAC, this new allegation in the TAC satisfies the exhaustion requirement.

To survive dismissal, Vizio must allege that Arch breached its obligations in failing to provide a defense or indemnity. The only communications Vizio alleges between Vizio and Arch occurred in early 2016, two years prior to the settlement of the Smart TV Litigation. (TAC ¶¶ 30, 31, 71.) Vizio asserts that the "timing of exhaustion" is a factual issue inappropriate for resolution at this stage. (Opp'n 13.) But the absence of allegations that the Underlying Limit was exhausted prior to any notice or tender of claim to Arch goes to the legal sufficiency of Vizio's claims, given that Arch's obligations did not require it "to participate in the defense of the insured as soon it [was] notified" of the claim, and prior to exhaustion. *Signal*, 27 Cal. 3d at 367. The Court has already held that "an excess insurer's silence in the face of notice of [a] claim . . . [is] not wrongful or a breach of the policy where there is no duty to defend." (Order MTD 4 (internal citation and quotation marks omitted).)

Vizio contests Arch's argument that the Arch Policy required it to provide "proof" of exhaustion. (Mot. 10; Opp'n 11–12.) Arch cites no authority, and the Court is not aware of any, stating that the insured must present "proof" of exhaustion to receive benefits under an excess policy, either as a general rule or under the circumstances of this case. But in arguing that Vizio owed no additional notice obligation to Arch other than what is alleged, Vizio oversimplifies and misstates the findings of *Signal*, *Schwartz v. State Farm Fire & Cas. Co.*, 88 Cal. App. 4th 1329 (2001), and *Phoenix Ins. Co. v. U.S. Fire Ins. Co.*, 189 Cal. App. 3d 1511 (1987). The courts in *Signal* and *Phoenix* both reasoned that excess insurers did not owe obligations to their insured prior to exhaustion, despite having notice of the claims at issue. *See supra* (discussing *Signal*, 27 Cal. 3d 359); *Phoenix*, 189 Cal. App. 3d at 1514 ("[W]ithout a duty to defend as an excess carrier the insurer had no obligation to notify its insureds of a reservation of rights."). And in *Schwartz*, the court observed

that despite generally owing no obligations prior to exhaustion, an excess insurer could not frustrate its insured's right to receive the benefits of the insurance contract by inequitably distributing funds to other insureds prior to exhaustion of the primary policy. 88 Cal. App. 4th 1329 at 1335. Thus, these holdings do not support Vizio's argument that its pre-exhaustion notice to Arch triggered any obligation for Arch or satisfied Vizio's own notice obligation.

Vizio fails to allege that Arch denied coverage or defense once its obligations were triggered by exhaustion of the Underlying Limit. In fact, Vizio brings a claim based on wrongful denial without alleging that Arch even had the opportunity to deny any claims once its obligations arose. (*See generally* TAC.) Absent any allegation that Arch owed obligations to Vizio at the time Vizio gave notice of the claim, the Court declines to find that Arch's actions—or inaction—in response to Vizio's 2016 initial notice constitute abandonment or denial. *See OneWest Bank v. Houston Cas. Co.*, No. CV-14-00547-BRO (JCGx), 2015 WL 11090350, at *13 (C.D. Cal. Mar. 9, 2015) (finding no breach where the insurer had no duty to defend at the time plaintiff purportedly tendered claim because the policy's self-insured retention limit had not yet been exhausted), *aff'd*, 676 F. App'x 664 (9th Cir. 2017). Accordingly, Arch's Motion is **GRANTED** as to the claim of breach of contract.[3]

Consequently, Vizio's claims for breach of the implied covenant of good faith and fair dealing, and declaratory judgment also fail. *See Love v. First Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990) ("[A] bad faith claim cannot be maintained

---

[3] Vizio also fails to allege that it sought prior consent for defense costs or the settlement, and Vizio fails to allege facts that would render the prior consent provision in the Arch Policy unenforceable. Under California law, a prior consent provision (also called a no voluntary payment provision) is enforceable, and its breach may prohibit recovery of costs, absent "economic necessity, insurer breach, or other extraordinary circumstances." *Low v. Golden Eagle Ins. Co.*, 110 Cal. App. 4th 1532, 1544 (2003). An insured may ignore the prior consent provision if it "has requested and been denied a defense," *Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges A.*, 3 Cal. 3d 434, 449 (1970), or been abandoned by its insurer, *Jamestown Builders, Inc. v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 347–48 (1999). Vizio has not alleged breach, denial, or abandonment by Arch, and thus, without more, the prior consent provision is enforceable and provides an alternative basis to grant Arch's Motion.

unless policy benefits are due."); *Blue Novis, Inc. v. U.S. All. Grp., Inc.*, No. SACV 20-01280 JVS (DFMx), 2021 WL 346422, at *6 (C.D. Cal. Jan. 27, 2021) ("When a [p]arty fails to adequately plead a breach of contract claim, a court may dismiss a request for declaratory relief."). Arch's Motion is also **GRANTED** as to these claims.

**B. Equitable Contribution**

"[T]he duty to contribute applies to insurers that share the same level of obligation on the risk as to the same insured." *Reliance Nat. Indem. Co. v. Gen. Star Indem. Co.*, 72 Cal. App. 4th 1063, 1080 (citing *Signal*, 27 Cal. 3d at 367–68). Vizio correctly asserts that the Arch Policy "becomes primary insurance" upon exhaustion. (*See* Arch Policy § 2.) Nonetheless, as discussed, Vizio has not alleged that Arch had an "obligation for any part of the loss, damage, or defense covered by the other primary insurance." *Id.* at 1081. As such, Vizio cannot bring a claim for equitable contribution against Arch because Arch (excess insurer) and Chubb (general liability/primary insurer) do not share the same level of coverage for the claim at issue and Vizio does not point to an agreement that contracts around that default rule. *Reliance*, 72 Cal. App. 4th at 1080–81. Accordingly, the Court **GRANTS** Arch's Motion as to this claim.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Arch's Motion. (ECF No. 63.) Vizio's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, equitable contribution, and declaratory judgment are **DISMISSED with leave to amend** the identified deficiencies. If Vizio chooses to file a fourth amended complaint, it must do so no later than twenty-one (21) days from the date of this Order, in which case Arch must file its response within fourteen (14) days. Failure to timely file a fourth amended complaint will be construed as a concession that amendment would not cure the deficiencies and this dismissal will convert to one with prejudice.

**IT IS SO ORDERED.**

December 29, 2021

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**