**O**

# United States District Court
# Central District of California

VIZIO, INC.,

               Plaintiff,

    v.

ARCH INSURANCE COMPANY, et al.,

               Defendants.

Case № 2:20-cv-06864-ODW (ASx)

**ORDER GRANTING DEFENDANTS MOTION TO DISMISS FOURTH AMENDED COMPLAINT [140]**

## I.   INTRODUCTION

Plaintiff Vizio, Inc. brought this action against Defendants Arch Insurance Company and Navigators Insurance Company based on its claim that Defendants failed to provide benefits pursuant to the terms of Vizio's primary and excess insurance policies. (*See* First Am. Compl., ECF No. 27.)  On January 19, 2022, Vizio filed its Fourth Amended Complaint ("FAC"), (ECF No. 139).  Arch now moves to dismiss Vizio's FAC under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Notice Mot. Dismiss, ECF No. 140; Mem. Supp. Mot. ("Mot." or "Motion"), ECF No. 140-1.)  For the reasons that follow, the Court **GRANTS** Arch's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

## II.   BACKGROUND

For purposes of this Rule 12(b)(6) Motion, the Court accepts Vizio's well-pleaded allegations as true. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Arch issued an insurance policy to Vizio for the initial policy period of December 31, 2013, through June 30, 2015, subject to an endorsement extending the policy period through December 1, 2015.  (FAC ¶ 13, Ex. 8 ("Arch Policy"), ECF No. 139-8.)  The Arch Policy is in excess of the primary policy that Navigators issued (the "Navigators Policy") and follows form with the Navigators Policy.  (Arch Policy § 1; FAC ¶ 13.)  Because the Arch Policy is an excess insurance policy, it provides coverage only after exhaustion of the underlying policy limit, which, in this case, is a $100,000 retention and a $5 million limit of liability.  (FAC ¶¶ 8, 13.)

Between November 2015 and October 2017, consumers filed lawsuits against Vizio relating to its Smart TV products (the "Smart TV Litigation").  (*Id.* ¶ 19.)  On February 2 and 3, 2016, Vizio, through its insurance broker, informed Arch about the pendency of the Smart TV Litigation.  (*Id.* ¶ 24.)  Prior to the February 2016 notice, Arch's Senior Vice President of Executive Insurance Claims, Brian Kristiansen, subscribed to the "Law 360 Class Action" email reports.  (*Id.* ¶ 23.)  In December 2015 and January 2016, as a result of this subscription, Kristiansen received three separate email digests containing information related to the Smart TV Litigation.  (*Id.*, Ex. 9 ("Class Action Reports"), ECF No. 139-9.)

On February 8, 2016, Arch responded to Vizio, stating that it would "be reviewing the information that has been provided" and upon "complet[ing] our review, we will provide our coverage analysis."  (*Id.* ¶ 26, Ex. 12 ("2/8 Arch Letter"), ECF No. 139-12.)   Thereafter, in May 2016, Arch sent Vizio a communication regarding a claim handler reassignment, and in June 2016, Arch sent Vizio a case update.  Aside from these communications, Arch provided no substantive response to Vizio's initial notification.  (*Id.* ¶ 30.)  On March 22, 2016, Navigators denied

coverage of Vizio's claim for the Smart TV Litigation because the litigation fell under an exclusion for coverage.  (*Id.* ¶ 27.)  Vizio disagreed, asserting that the exclusion did not apply.  (*Id.* ¶ 35.)  On June 16, 2016, Vizio forwarded to Arch the correspondence from Navigators denying coverage in the Smart TV Litigation.  (*Id.* ¶ 31.)  Arch did not conduct any further analysis or review regarding coverage, and never explicitly advised Vizio of Arch's decision to deny coverage for Vizio's claim.  (*Id.* ¶ 41.)

On March 15, 2018, Vizio settled the Smart TV Litigation for $17 million.  (*Id.* ¶ 44.)  Vizio and its general liability insurer, Chubb & Son, entered a confidential settlement agreement wherein Chubb paid approximately $10.77 million in connection with the Smart TV Litigation, including $6 million allocated to the settlement and approximately $4.77 million allocated to costs of defense.  (*Id.* ¶ 45.)  Vizio paid approximately $15,628,416 out of pocket for the Smart TV Litigation, which included $11 million for the settlement and $4,628,416 for costs of defense.  (*Id.* ¶ 49.)  Vizio thereby exhausted the underlying limit, rendering the Arch Policy "primary" pursuant to its terms.  (*Id.* ¶ 53.)  Although Arch was aware of the existence of the Smart TV Litigation settlement, and therefore ostensibly aware that Vizio exhausted its primary policy limits, Arch did not make any payments to Vizio.  (*Id.* ¶ 55.)

On July 30, 2020, Vizio initiated this action against Defendants based on their alleged failure to provide benefits pursuant to the terms of their primary and excess insurance policies.  (*See generally*, Compl., ECF No. 1.)  The Court denied as moot Arch's first motion to dismiss because Vizio amended its original complaint.  (First Mot. Dismiss, ECF No. 18; Order Den. Mot., ECF No. 28.)  However, Arch filed a second motion, seeking dismissal of Vizio's first amended complaint.  (First Am. Compl.; Second Mot. Dismiss, ECF No. 30.)  The Court granted the motion finding that Vizio failed to allege exhaustion of the Underlying Limit and thus could not show that, while acting as the excess insurer, Arch's obligations were triggered.  (*See* Order Granting Second Mot. Dismiss, ECF No. 45.)  The Court provided Vizio with leave to amend, and Vizio filed a second amended complaint.  (*Id.*; Second Am. Compl., ECF

No. 51.)  The Court then granted the parties' stipulation to allow Vizio to file a third amended complaint.  (Order Granting Stip., ECF No. 60.)

Vizio filed its third amended complaint and Arch filed a fourth motion seeking dismissal of Vizio's claims.  (Third Am. Compl. ("TAC"), ECF No. 62; Fourth Mot. Dismiss, ECF No. 63.)   The Court again dismissed Vizio's claims on the same grounds as those in its prior dismissal.  (Order Granting Third Mot. Dismiss ("Order 3MTD"), ECF No. 134.)   Around this time, Vizio dismissed Navigators from this action, leaving only Arch as a named Defendant.  (Stip., ECF No. 125.)

Vizio then filed its currently operative fourth amended complaint ("FAC"), asserting the same claims as it asserted in the TAC: (1) breach of written contract; (2) breach of the covenant of good faith and fair dealing; (3) equitable contribution; and (4) declaratory judgment.  Arch now moves for the fifth time to dismiss Vizio's claims.  The Motion is fully briefed. (*See* Opp'n, ECF No. 141; Reply, ECF No. 142.)

### III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a motion to dismiss, "a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2).  Rule 8(a)(2) requires only that the complaint include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003) (quoting Fed. R. Civ. P. 8(a)(2)).   Under this standard, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Determining whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 679.   A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.   *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).   However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).   Ultimately, there must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and the "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

When a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008).   Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (noting leave to amend "is properly denied . . . if amendment would be futile").

## IV.   DISCUSSION

As explained below, the Court finds that Vizio again fails to state a claim after having had five opportunities to properly plead its case.   Accordingly, the Court dismisses Vizio's FAC, this time with prejudice and without leave to amend.

### A.   Breach of Written Contract

As discussed, Vizio had a primary policy with Navigators.   **"**Primary insurance refers to the first layer of coverage, whereby 'liability attaches immediately upon the happening of the occurrence that gives rise to liability.'"   *Montrose Chem. Corp. v.*

*Superior Ct. of L.A. Cnty.*, 9 Cal. 5th 215, 222 (2020) (quoting *Olympic Ins. Co. v. Emps. Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 597 (1981)), *as modified* (May 27, 2020).  By contrast, excess insurance "attaches upon the exhaustion of underlying insurance coverage for a claim."  *Id.* (quoting *County of San Diego v. Ace Prop. & Cas. Ins. Co.*, 37 Cal. 4th 406, 416 n.4 (2005)).  "As a general rule, under California law the primary insurer alone owes a duty to defend," and "[i]n the absence of contract language to the contrary, the excess carrier has no right or duty to participate in the defense until the primary policy limits are exhausted."  *Ticor Title Ins. Co. v. Emps. Ins. of Wausau*, 40 Cal. App. 4th 1699, 1707 (1995); *see Signal Cos., Inc. v. Harbor Ins. Co.*, 27 Cal. 3d 359, 368 (1980) ("[T]he primary insurer . . . is solely liable for the costs of defense if the judgment does not exceed primary coverage.").

The excess insurer's obligations begin only once a certain level of loss or liability is reached, or, once underlying limits are exhausted.  *Montrose Chem. Corp.*, 9 Cal. 5th at 222–23 (2020); *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994).  If, however, the recovery exceeds the primary limits, then the excess carrier may be required to share in the cost of defense.  *Travelers Ins. Co. v. Norwich Union Fire Ins. Soc.*, 221 Cal. App. 2d 150, 153 (1963).

An excess insurer's obligations are not triggered prior to exhaustion even when there is a possibility the claim might require the excess coverage.  *Travelers Cas. & Sur. Co. v. Am. Int'l Surplus Lines Ins. Co.*, 465 F. Supp. 2d 1005, 1022 (S.D. Cal. 2006); *Signal*, 27 Cal. 3d at 359.  In *Signal*, the California Supreme Court decided a dispute between a primary and an excess insurer in which the primary insurer undertook the insured's defense and then sought to recover some of the defense costs against the excess insurer.  27 Cal. 3d at 359.  Despite the excess insurer's knowledge of the insured's claims for coverage, throughout the litigation—and despite the excess insurer's involvement in certain settlements of the underlying claims—the *Signal* court found that the duties of the excess insurer did not require it "to participate in the

defense of the insured as soon as it is notified of the claim, and even though the primary insurance coverage ha[d] not as yet been exhausted." *Id.* at 367.

As discussed in this Court's previous order, (Order 3MTD), this case, much like *Signal*, involves circumstances where the "exhaustion of primary coverage and the settlement of all claims occurred simultaneously." *Id.* at 365. Additionally, all defense costs in the present case, like those in *Signal*, were incurred prior to the request that the excess contribute to any settlement and costs of defense. *Id.* Under *Signal*, an excess insurer's duties are triggered "by exhaustion of the primary coverage, not by being put on notice that a claim might invade excess coverage." *See id.* at 366 (rejecting the notion that "once the excess insurer has been given notice that the [claim] against its insured might invade the excess coverage . . . the excess insurer should be obligated to participate immediately in the defense"); (*see also* Order 3MTD 6).

The Arch Policy specifies when it comes into effect. The Arch Policy's excess coverage is triggered after exhaustion of the Underlying Limit, and the Underlying Limit is defined as "the aggregate sum of all limits of liability of all Underlying Insurance." (Arch Policy §§ 1, 3F.) The Underlying Insurance, in turn, is defined as the Primary Policy (i.e., Navigators Policy) and any Underlying Excess Policies. (*Id.* § 3E.) Under the Arch Policy, the "Underlying Limit shall be exhausted by payment . . . of covered Loss by the insurers of the Underlying Insurance" (i.e., Navigators), "the Insureds" (i.e., Vizio), "or any DIC Insurer."[2] (*Id.* § 2A.) The Navigators Policy has a $5 million limit of liability and a $100,000 per claim retention. (*See* Navigators Policy.)

In its FAC, Vizio properly alleges it exhausted the limits of its primary policy. According to Vizio's FAC, it paid "approximately $15,628,416 out of pocket in

---

[2] The FAC states, "DIC Insurer is defined as any insurer of an insurance policy written specifically excess of [the Arch] Policy that is contractually obligated to drop down and pay covered Loss that is not paid by any Underlying Insurance." (FAC ¶ 16 n.21 (internal quotation marks omitted).)

1    connection with the Smart TV litigation, including $11 million allocated to settle the

2    Smart TV Litigation, and $4,628,416 allocated to Costs of Defense." (FAC ¶ 49.)

3    Additionally, Vizio alleges that, to date, it has not received reimbursement for at least

4    $12,128,416. (*Id.*) Vizio thus sufficiently alleges that it satisfied exhaustion of the

5    Underlying Limit.

6        However, in order for its claims to survive the present Motion, Vizio must do

7    more than merely allege exhaustion. As Vizio is aware, it must also allege that Arch

8    breached its obligations in failing to provide defense or indemnity. (*See* Order

9    3MTD 7.) The facts pertaining to this issue in Vizio's FAC are identical in substance

10   to those facts in Vizio's TAC. In Vizio's FAC, it alleges that it communicated with

11   Arch on February 2 and 3, 2016. (FAC ¶ 24.) The communication gave notice to

12   both Arch and Navigators of the pending Smart TV Litigation. (*Id.*) Although Vizio

13   provides copious information about the internal communications within Arch that

14   references the February 2 and 3 communications, there is no indication that Vizio

15   communicated with Arch again after exhaustion. (*See generally*, FAC.) In fact, the

16   last communication between Vizio and Arch appears to be a June 16, 2016 email from

17   Arch requesting Vizio's insurance broker to "provide copies of any coverage

18   correspondence sent from the primary carrier," to which Vizio responded with a letter

19   from Navigators denying coverage of the Smart TV Litigation. (*Id.* ¶¶ 30-31.) Based

20   on the information Vizio provided, Arch, at least internally, concluded that Vizio's

21   claim for coverage under the Arch policy should likewise be denied, because coverage

22   was excluded by the Navigators Policy exclusion for invasion of privacy. (*Id.* ¶ 35.)

23   The only notices Vizio provided directly contradicted the contention that the primary

24   policy limit had been exhausted.

25       Here, as the Court previously found in its most recent dismissal order, the lack

26   of allegations that Vizio provided proper notice or tender of a claim to Arch after

27   exhaustion of the underlying limit, goes to the legal sufficiency of Vizio's claims.

28   Arch's obligations did not require it to "participate in the defense of the insured as

1    soon as it [was] notified" of the claim, prior to exhaustion.   *Signal*, 27 Cal. 3d at 367.

2    The Court has already held that "an excess insurer's silence in the face of notice of [a]

3    claim . . . [is] not wrongful or a breach of the policy where there is no duty to defend."

4    (Order 3MTD 7.)

5          Vizio alleges it satisfied the notice requirement by providing information that

6    Kristiansen, an Arch employee, was subscribed to the Law360 Class Action Report.

7    (FAC ¶ 23.)   According to Vizio, as part that subscription, Kristiansen received a

8    number of reports regarding Vizio's Smart TV Litigation in December 2015, January

9    2016, and March 2017.   (*Id.* ¶¶ 23, 43.)   This argument is not persuasive.   That a

10   single Arch employee received a newsletter does not establish that the recipient

11   actually read it, and even if it did, reading such a newsletter does not establish that the

12   recipient then read the articles cited therein.   The fact remains that—as the Court

13   determined in its previous order—Vizio only communicated with Arch in 2016, two

14   years prior to the settlement of the Smart TV Litigation in 2018. (*Id.* ¶¶ 24, 44–45.)

15         Vizio also attempts to allege sufficient notice by stating that its Notice of

16   Potential Settlement became available on the PACER website.   (*Id.* ¶ 46, Ex. 21;

17   Opp'n 10.)   This argument is equally unpersuasive.   As Arch correctly asserts, no

18   binding precedent suggests it has no obligation "to scour the internet for any publicly

19   available information regarding Plaintiff to divine whether a claim has been made and

20   if the policy has been triggered by exhaustion of any underlying limits, while Plaintiff

21   has no obligation to provide any notice that the policy may be triggered through

22   exhaustion."   (Reply 7.)   The availability of settlement information on PACER does

23   not constitute notice of exhaustion to Arch.

24         Curiously, Vizio asserts that, "the Court has already found that Vizio

25   sufficiently alleges exhaustion, and has rejected Arch's contention regarding notice of

26   exhaustion as a prerequisite to Arch's obligations under the policy."   (Opp'n 12

27   (internal quotation marks omitted).)   This statement is half-true at best.   Vizio is

28   correct that it alleges that it reached the liability limit on its primary policy.   Vizio is

also correct that, as the Court previously held, there is no authority suggesting Vizio must provide "proof" of exhaustion to the insurer "to receive benefits under an excess policy, either as a general rule or under the circumstances of this case."   (Order 3MTD 7.)   However, Vizio's assertion wholly disregards the very next sentence of this Court's previous order, wherein the Court found that when Vizio argued that it "owed no additional notice obligation to Arch other than what is alleged, Vizio oversimplifie[d] and misstate[d] the findings in *Signal* . . . and *Phoenix Ins. Co. v. U.S. Fire Ins. Co.*, 189 Cal. App. 3d 1511 (1987)," as well as those in *Schwartz v. State Farm Fire & Cas. Co.*, 88 Cal. App. 4th 1329 (2001).  (*Id.*)

As previously discussed, in both *Signal* and *Phoenix*, the court reasoned that excess insurers did not owe obligations to their insureds prior to exhaustion, despite having notice of the claims at issue.  (*See id.* (first citing *Signal*, 27 Cal. 3d 359; and then citing *Phoenix*, 189 Cal. App. 3d at 1511).)  As the court observed in *Phoenix*, without a duty to defend an excess carrier, an insurer can have no obligation to notify its insureds of reservation of rights.  189 Cal. App. 3d at 1514.  And in *Schwartz*, the court observed that despite generally owing no obligations prior to exhaustion, an excess insurer could not frustrate its insured's right to receive the benefits of the insurance contract by inequitably distributing funds to other insureds prior to the exhaustion of the primary insurance policy.  88 Cal. App. 4th at 1335.

Furthermore, in addressing Vizio's claim for wrongful denial, this Court previously found that "[a]bsent any allegation that Arch owed obligations to Vizio *at the time Vizio gave notice of the claim*, Arch's actions—or inactions—in response to Vizio's 2016 initial notice [do not] constitute abandonment or denial" of the claim.  (Order 3MTD 7 (emphasis added).)   This finding is in accord with other cases addressing the duty to defend at the specific time notice if given.  *See One W. Bank, FSB v. Hous. Cas. Co.*, No. CV-14-00547 BRO (JCGx), 2015 WL 11090350, at *13 (C.D. Cal. Mar. 9, 2015) (finding the insurer had no duty to defend at the time the plaintiff purportedly tendered its claim because the policy's self-insured retention

1   limit had not yet been exhausted), *aff'd*, 676 F. App'x 664 (9th Cir. 2017).   In its
2   FAC, Vizio offers no new facts supporting the contention that Arch owed obligations
3   at the time Vizio purportedly tendered the claim.   Notably, Vizio tendered the claim in
4   February of 2016, and provided an update in June of 2016.   (FAC ¶¶ 24, 30-31.)
5   Vizio even contends in its Opposition that exhaustion did not occur until
6   September 21, 2017.   (Opp'n 12.)   The Court therefore cannot conclude, based on
7   Vizio's allegations, that Arch owed obligations to Vizio at the time Vizio gave notice
8   of the claim.   Thus, the Court **GRANTS** Arch's Motion as to Vizio's claim for breach
9   of contract.   Consequently, Vizio's claim for breach of the implied covenant of good
10  faith and fair dealing and declaratory judgment claim both fail.   *See Love v. Fire Ins.*
11  *Exch.*, 221 Cal. App. 3d 1136, 1153 (1990) ("[A] bad faith claim cannot be
12  maintained unless policy benefits are due."); *see Blue Novis, Inc. v. U.S. All. Grp.,*
13  *Inc.*, No. SACV 20-01280 JVS (DFMx), 2021 WL 346422, at *6 (C.D. Cal. Jan. 27,
14  2021) ("When a [p]arty fails to adequately plead a breach of contract claim, a court
15  may dismiss a request for declaratory relief.").   The Court **GRANTS** Arch's Motion
16  as to these claims.

17       **B.    Equitable Contribution**

18       By way of its equitable contribution claim, Vizio seeks contribution from Arch
19  for the alleged losses.   "[T]he duty to contribute applies to insurers that share the same
20  level of obligation on the risk as to the same insured."   *Reliance Nat. Indem. Co. v.*
21  *Gen. Star Indem. Co.*, 72 Cal. App. 4th 1063, 1080 (1999) (citing *Signal*, 27 Cal. 3d
22  at 367–68).   "However, . . . there is no contribution between a primary and excess
23  carrier without a specific agreement to the contrary."   *Id.*

24       Here, the Arch Policy "becomes primary insurance" upon exhaustion.   (*See*
25  Arch Policy § 2.)   Like its previous iterations, Vizio's FAC "does not contain any
26  allegations that Arch was made aware of the exhaustion of the Underlying Limit" and
27  thus, Arch was not obligated to contribute on the basis of exhaustion.   (*See* Mot. 24.)
28  Aside from that possibility, and as discussed in the Court's present and previous

orders, Vizio has not alleged that Arch had an "obligation for any part of the loss, damage, or defense covered by the other primary insurance." *Reliance*, 72 Cal. App. 4th at 1081. Vizio cannot bring a claim for equitable contribution against Arch because Arch (the excess insurer) and Chubb (the general liability/primary insurer) do not share the same level of coverage for the claim at issue, and Vizio does not point to an agreement that contracts around that default rule. *See Reliance*, 72 Cal. App. 4th at 1080–81. Accordingly, the Court **GRANTS** Arch's Motion as to this claim.

## V.     CONCLUSION

"When a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad." *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (internal quotation marks omitted). A plaintiff's failure to "correct . . . deficiencies" after being given leave to amend "is a strong indication that the plaintiffs have no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). Vizio has had multiple chances to correct the same deficiencies in its complaint and has repeatedly failed to do so. Accordingly, the Court finds that providing additional leave would be futile.

For the foregoing reasons, the Court **GRANTS** Arch's Motion, (ECF No. 140), and therefore **DISMISSES with prejudice and without leave to amend** Vizio's claims. Accordingly, the Court **DENIES AS MOOT** Vizio's Motion to Strike Expert Witness Designation, (ECF No. 143), and Arch's Motion for Summary Judgment, (ECF No. 150). The Court will issue a judgment consistent with this Order.

**IT IS SO ORDERED.**

July 19, 2022

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**